Submitted October 31, 2013, affirmed February 11, petition for review denied June 4, 2015 (357 Or 324)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY EMIL ANTOINE,
*Defendant-Appellant.*

Washington County Circuit Court
C100942CR; A149373

344 P3d 69

Peter Gartlan, Chief Defender, and Robin A. Jones, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

### NAKAMOTO, J.

Defendant was convicted of all nine felonies charged: four counts of sodomy, four counts of first-degree sexual abuse, and one count of furnishing sexually explicit material to the victim, a primary-school-aged girl. Each count of sodomy and of sexual abuse alleged commission of a crime during the same 25-month period, using the words of the relevant criminal statute. Through a demurrer, defendant unsuccessfully challenged the form of the indictment based on its lack of specificity and the greater number of acts of sodomy and sexual abuse presented to the grand jury than charged in the indictment. At trial, after the state presented its case-in-chief, the state "elected" and ascribed specific and separate criminal acts to each of the counts. Defendant then unsuccessfully opposed the state's election by way of his motion for judgment of acquittal and objected to the court's jury instructions that were crafted in accordance with the state's election.

On appeal, defendant challenges the trial court's adverse rulings on his demurrer, motion for judgment of acquittal, and objection to the jury instructions.[1] He argues that his constitutional rights were violated because of insufficient notice of the charges, because of the risk of double jeopardy, and because of the state's failure to try him for criminal acts for which the grand jury indicted him, in contravention of Article VII (Amended), section 5(3), of the Oregon Constitution. For the reasons that follow, we affirm.

## I. BACKGROUND

### A. *The grand jury indictment*

The relevant facts are procedural and undisputed. Each of the charges arose from the allegations of the young daughter of defendant's former girlfriend. The victim reported that defendant had, on multiple different occasions, engaged in various sexual acts with her over a period of time between 2006 and 2008 when defendant was living with her and her mother. A grand jury indicted defendant

---

[1] We reject without public discussion defendant's fourth through seventh assignments of error concerning evidentiary and instructional rulings and his sentence.

on four counts of first-degree sodomy, ORS 163.405;[2] four counts of first-degree sexual abuse, ORS 163.427;[3] and one count of furnishing sexually explicit material to a child, *former* ORS 167.054 (2007), *repealed by* Or Laws 2011, ch 681, § 10.[4]

The sodomy allegations were couched in the wording of ORS 163.405. In wording that was repeated for each of the sodomy counts, the indictment charged:

"That as a separate act and transaction from [each of the other counts]: The defendant, on or between September 1, 2006 and October 1, 2008, in Washington County, Oregon, did unlawfully and knowingly have deviate sexual intercourse with [the victim], a child under 12 years of age."

The charges of sexual abuse were couched in the wording of ORS 163.427 and similarly repetitive. For each of the sexual-abuse counts, the indictment charged:

"That as a separate act and transaction from [each of the other counts]: The defendant, on or between September 1, 2006 and October 1, 2008, in Washington County, Oregon, did unlawfully and knowingly subject [the victim], a child under 14 years of age, to sexual contact by touching [the victim]'s genitalia, a sexual and intimate part of the child."

Lastly, the count of furnishing sexually explicit material to a child provided:

"That as a separate act and transaction from that alleged in Counts 1-8: The defendant, on or between September 1,

---

[2] ORS 163.405 provides, in relevant part:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"* * * * *

"(b) The victim is under 12 years of age[.]"

[3] ORS 163.427 provides, in relevant part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age[.]"

[4] *Former* ORS 167.054 provided, in relevant part, "(1) A person commits the crime of furnishing sexually explicit material to a child if the person intentionally furnishes a child, or intentionally permits a child to view, sexually explicit material and the person knows that the material is sexually explicit material."

2006, and October 1, 2008, in Washington County, Oregon, did unlawfully and intentionally furnish and permit [the victim], a child, to view sexually explicit material, defendant knowing that the material was sexually explicit."

## B. *Discovery and the demurrer*

The state provided defendant with 84 pages of documents and six compact discs in discovery. The discovery included at least four police reports, a report and a video from a child abuse assessment center, various other recorded interviews with witnesses, and miscellaneous notes and documents. The discovery indicated that the victim had reported a greater number of criminal sexual acts than were alleged in the indictment.

As a result, defendant filed a demurrer under ORS 135.630(2) (providing that a defendant may demur to a charging instrument when it "does not substantially conform to the requirements of," among other statutes, "ORS 132.510 to 132.560"). Defendant contended that, despite having received discovery from the state, the indictment was not sufficiently definite and certain as required by ORS 132.550(7) (providing that an indictment must contain a "statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended"). Defendant's demurrer was based on the fact that the indictment's counts of sodomy and sexual abuse were not tied to specific facts and the discovery disclosed that the counts charged in the indictment were but a subset of the number of criminal acts that the victim had reported. Specifically, he asserted that the indictment provided insufficient notice of the charges, placed him at risk of double jeopardy, and failed to ensure that he was being tried only for those criminal acts for which the grand jury had indicted him. Defendant requested that the court dismiss the indictment and require the state to go back to the grand jury and obtain an indictment based on specific criminal acts.

The prosecutor told the court that the state could adequately resolve the problem by making an election of the specific criminal acts for which it would seek convictions at trial. The prosecutor explained:

"What the Defense—what the crux of the argument essentially is[,] is they're saying to the Court, 'Look, when we try and take the indictment and we match it up against the discovery, we can't really figure out exactly what Count 1 relates to and what Count 2 relates to.' And when they're going through there they say, 'Well, you know, the CARES reports, she talks about this. The police reports, she kind of describes it a little bit differently. What's what? What's going on here?' * * * And the response to that is that the State can be required to[,] and in fact I believe will[,] make an election during its case when the State elects what the different counts are going to relate to.

"And the purpose of an election is so that at the close of the State's case when the jurors—as the Court knows, when the jurors are deliberating * * * we want to make sure that jurors 1 through 12 when they're thinking about Count 1,* * * they're all thinking about the time it happened, you know, in the master bedroom instead of having some of them think about the master bedroom and some[] thinking about the garage. * * * But the State will make an election if the Defense requests it to do so. * * * That's the way that we deal with this situation."

Thus, the state put defendant on notice at the hearing on the demurrer that it would make its election *after* it presented its case-in-chief. Defendant did not object to the timing of the election.

The court overruled the demurrer. In a letter opinion, it concluded that the indictment was sufficient in all the challenged respects. The court also ordered the state to comply with the following requirement:

"[W]hen the prosecution makes its election during the course of trial, it must only choose to rely upon factual incidents relied upon by the grand jury in returning the indictment. (In this particular case, this will require coordination between the deputy district attorney who presented the case to the grand jury and the deputy district attorney who presents the case at trial.)"

Before trial, in accordance with the above-quoted ruling, defendant moved, unsuccessfully, for an order requiring the state to disclose grand jury notes. The information disclosed at the hearing on that motion is pertinent to the issues on appeal.

Defendant stated that other newly received discovery provided more indications that the acts alleged by the victim did not correspond to the charges in the indictment. Specifically, defendant explained that, based on recently produced notes of interviews of the victim conducted by a police detective and the prosecutor,

> "[the victim] stated that there was one instance of mouth to penis and on[e] instance of mouth to vagina. And then the others were hand to penis. So I got what looks like, I don't know, eight or ten or twelve sex abuse ones potentially in th[ose] new notes and only two sodomies."

In response, the prosecutor confirmed that the grand jury had selected a subset of the incidents of abuse for the indictment and described the procedures that the state had employed before the grand jury:

> "[I]n this case, as in so many other sex abuse cases, we don't allege a charge for every single time a criminal act occurred. For example, the child comes in and says, 'Over the course of two years he touched me so many times, you know, once a week, twice a week,' we're not going to put a, you know, 700-count indictment. It would just—wouldn't make sense to do that.

> "So frequently we find ourselves in a situation where we pick and choose, and we can do that in one of two ways. We can have the grand jury consider the whole or the entirety of the evidence, and then we can say, 'Okay, grand jury, we'd like you to vote on four,' let's say it's Sex Abuse I's, 'And when you vote on these four Sex Abuse I's, Count I is going to relate to the time in the kitchen. Count 2's going to be the time in the car. Count 3's the time on Christmas morning. And Count 4 is the time when he was watching pornography,' so that each one is tied to a particular incident. The grand jury votes, and we end up with four counts. And then we have those four counts in the indictment.

> "* * * * *

> "That's not the only way though. There is another way of filing charges. Another way would be to say to the grand jury, 'Okay, you've heard testimony that this occurred, I don't know, 100 times. We'd like you to vote on just four charges, four sex abuse I's as a representative sample of the 100 or so times you've heard testimony of.

"'If you believe it happened four different times, you can vote on four counts.'

"And here's the kicker, the grand jury, they kick us out of the room when they vote on it. I'm not even in there when they're voting. [The district attorney], who was the DA at the grand jury stage here, isn't in the room when they're voting. We just know the results of their vote, and we know whether or not we've told them, 'Pick a representative sample.' So those are the two different ways that it can occur at the grand jury stage.

"In this case I've spoken with [the district attorney who presented the case to the grand jury] because [the judge who ruled on the demurrer] asked me to do that. And she's indicated *that these particular counts were not tied to particular factual incidents that occurred. In other words, they're representative samples of broader abuse that occurred. \* \* \* I fully anticipate [the victim's] testimony will be there happened to be a number of different times, more than just the four Sex Abuse I's and four Sodomy I's that have been charged in this case.*"

(Emphasis added.) The prosecutor later emphasized that "the grand jury did not consider specific facts related to specific charges." Rather, it was "presented with the information in the discovery and determined that each kind of touching happened at least X number of separate times."

The prosecutor also reiterated that the state would make an election at trial at the close of its case:

"So I will say at the close of my case to the Court, 'Judge, Count 1 relates to X.' I'm not required to make that election until before the close of my case. The reason for that is when twelve jurors are voting on Count 1 guilty or not guilty, we can't have six of them thinking it's the time in the tree house, six of them thinking it's the time in the kitchen. They all have to be thinking about the same one.

"If we've already decided at the grand jury stage that Count 1 is the time in the kitchen, my election has to be the same. I can't elect it differently. I can't change it midcourse. That hasn't happened in this case. *So I haven't—we haven't been tied to anything yet. So I don't know right now what Count 1 will relate to. I'll elect at the end of my case and the same with Counts 2 through 9.*"

(Emphasis added.) Again, defendant did not object to the timing of the election.

Thus, before trial, the state conceded that it did not know and could not know which of the specific criminal acts that the grand jury had considered were intended to be charged in the indictment. And, by virtue of the multiple reported criminal acts and the carbon-copy counts couched in the words of the relevant statutes, the state acknowledged that any specific count in the indictment would cover multiple criminal acts that could be, and ultimately were, the subject of evidence presented at trial during the state's case-in-chief. Defendant, however, did not seek to discover before trial exactly which criminal act the state would be prosecuting through each of the counts.

C.  *The state's election and defendant's motion for judgment of acquittal and objection to jury instructions*

The case proceeded to a jury trial. At trial, the state made its election, choosing factually distinct, specific criminal acts by adding to each of the counts both a general description of the type of sexual contact and a location where it occurred. In accordance with its announcements before trial, the state did so after it had rested its case.

After the state's election, defendant moved for judgment of acquittal on all eight of the sodomy and sexual-abuse counts based on the way the matter was presented to the grand jury, charged, and tried.[5] Defense counsel stated that he was relying on his arguments in his earlier demurrer and motion to compel disclosure of grand jury notes and contended that the state's election amounted to amendment of the original indictment, that the counts actually presented to the jury at trial were never specified by the grand jury, and that defendant had been denied "rights to a fair trial, to due process under the federal constitution, [and] to notice of the exact charges against him." The state responded that the grand jury properly had considered factual information on which to base the charges but acknowledged again that the indictment had not "tied specific factual information

---

[5] Defendant had earlier moved for a judgment of acquittal on Count 9, furnishing sexually explicit material to a child, which the court denied.

that it had received to specific charges that it chose to indict on." The court denied the motion.

The trial court addressed the problem that the original, carbon-copy charges created for the jury by adding descriptors in the jury instructions that matched the state's election. For example, as to one of the sexual abuse counts, the court specified, before instructing on the elements of that count, "Sexual Abuse in the First Degree, Count 5, master bedroom"; as to one of the sodomy counts, for example, the court specified, "Sodomy in the First Degree, Count 1, penis/mouth, master bedroom." Defendant objected to the additional wording for the instructions on the sodomy and sexual abuse counts. Defendant objected because the instructions contained language that was not presented to the grand jury, and he took exception to the identifying language that the court added. The jury returned guilty verdicts on each of the nine counts.

## II. ANALYSIS

### A. *Demurrer*

On appeal, defendant makes a combined argument concerning the overruling of his demurrer, the denial of his motion for judgment of acquittal, and the giving of jury instructions concerning the sodomy and sexual-abuse counts that aligned with the state's identification of specific incidents. Defendant again asserts that he was denied sufficient notice of the charges, that he lacked adequate information to assert his right against double jeopardy, and that the state tried him on counts of criminal conduct that the parties and the court did not know and would never know were the same counts for which he was indicted by the grand jury. In the context of his demurrer, we address defendant's notice argument and his grand jury argument, both of which he made to the trial court.

### 1. *Notice*

Defendant argues that the indictment was constitutionally defective because it failed to provide sufficient notice of the charges against him, in violation of his right under the Sixth Amendment to the United States Constitution "to be informed of the nature and cause of

the accusation"; his right under Article I, section 11, of the Oregon Constitution to "demand the nature and the cause of the accusation against him"; and statutory rights, including ORS 132.550(7), providing that an indictment must include "[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." The state asserts that defendant received notice of the charges by virtue of the state's election at trial. We agree with defendant that the indictment itself did not provide him with sufficient notice, and the problem with inadequate notice, which arose before trial, was not cured during trial.

Normally, an indictment suffices if it alleges the commission of a crime in the words of the statute defining the offense. *See State v. Hale,* 335 Or 612, 621, 75 P3d 448 (2003), *cert den,* 541 US 942 (2004) (stating that "an indictment generally is sufficient if it charges an offense in the words of the statute"). However, as we have observed, the Oregon Supreme Court has also held "that it is not always sufficient to describe an offense in the language of the statute." *State v. Cooper,* 78 Or App 237, 240, 715 P2d 504 (1986). That can occur when, for example, "discovery would not aid the defendant because of the vast number of crimes from which the state could select in charging the defendant." *Id.* In *Cooper,* the trial court sustained a demurrer to a complaint charging the defendant in the language of the statute stating the offense of promoting gambling. *Id.* at 239. We affirmed and held that, because "promotes gambling" was defined by a nonexclusive list of acts, discovery was an insufficient substitute for a charging instrument that specified "the acts allegedly committed" by the defendant. *Id.* at 241-42. As we stated in *State v. Molver,* 233 Or App 239, 244, 225 P3d 136 (2010), although ordinarily an indictment that "tracks the pertinent wording of the statute defining the crime" will withstand a demurrer, "an exception exists where discovery is unlikely to inform the defendant of the specific criminal conduct that the state intends to prove."

As defendant argues, this case falls within the exception. This case involves multiple, separately identifiable criminal acts, but the indictment tracks the wording of

the criminal statutes without differentiating separate criminal acts. From discovery, defendant learned that the victim had described more criminal acts than were charged in the indictment, and the state elected the specific criminal acts that it was prosecuting only after the close of its case-in-chief. As a result, the state's charging method effectively allowed the state to adduce evidence of multiple criminal acts in each count of the indictment, without defendant knowing which of the acts would be specified and argued to the jury for convictions. Such a charging process failed to provide defendant with proper notice of the charges before trial.[6]

The Oregon Supreme Court's decision in *Hale* provides support for that conclusion. In *Hale*, the defendant filed a demurrer, arguing that aggravated murder allegations based on murder to conceal the crime of third-degree sexual abuse and to conceal the identity of the perpetrator of third-degree sexual abuse, although couched in the wording of the statute, did not provide sufficient notice. 335 Or at 617-18. The record indicated that the defendant or another person may have sexually abused a number of murder victims. *Id.* at 616. The Supreme Court agreed with the defendant that, in that case, "where the record would support more than one incident of third-degree sexual abuse, defendant was entitled to know the state's precise theory of the case and which facts and circumstances the state was relying on to support the aggravated murder counts." *Id.* at 620-21.

The lack of notice as to the criminal acts that the state would choose to prosecute at trial put defendant at a disadvantage as he tried to defend against the charges. That is because the state's method of charging, combined with a late election, allows the state to present evidence of a defendant's multiple bad acts and then to select, mid-trial, which of those will be considered as a charge for the jury

---

[6] There are cases in which young children or others with disabilities may not be able to describe a particular incident with specificity and instead may generically describe repeated abuse of a particular type that has occurred over a period of time; in other words, they cannot describe dates, exact locations, or other details to differentiate one incident from the next. However, that type of case should be separately addressed because it presents its own charging challenges. It suffices to say that this is not such a case. Indeed, the state was able to adequately identify discrete instances of criminal conduct for the jury because the victim was able to do so.

to decide. That approach to charging undermines efforts by Oregon courts to prevent "other acts" evidence from being introduced in contravention of the principle in OEC 404(3) that such evidence "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." *See, e.g., State v. Leistiko*, 352 Or 172, 184-85, 282 P3d 857, *modified on recons*, 352 Or 622, 292 P3d 522 (2012) (holding that, absent a defendant's stipulation, the state must first introduce evidence sufficient to allow the jury to find that the charged act occurred before the trial court can admit uncharged misconduct evidence to prove intent). In this case, the trial court did not know what charges were being brought—in contravention of another core function of the indictment, *see State v. Burnett*, 185 Or App 409, 415, 60 P3d 547 (2002)—until after the state had concluded its case. When the state employs the charging method used in this case coupled with a late election, a trial court is powerless to sustain objections to "other acts" evidence under OEC 404(3) because the court does not know what charges are being prosecuted.

Nevertheless, *Hale* leads us to affirm the trial court's ruling on the demurrer, insofar as it was based on insufficient notice of the charges. In *Hale*, the Supreme Court affirmed the denial of the defendant's demurrer to the indictment, which was based on an assertion that the indictment was not sufficiently definite and certain. 335 Or at 621. The court concluded in *Hale* that the trial court was not compelled to grant the defendant's demurrer against an indictment framed in the words of the aggravated murder statute, because the defendant "had other avenues available to him for acquiring" the particularized information he sought, such as by "later moving" "to require the state to elect a specific incident * * * or requesting special jury instructions to clarify the matter." *Id.* We understand *Hale* to place the burden on a defendant to attempt to procure adequate and timely notice of the charges against him, even when an indictment that is alleged in the words of the statute does not provide such notice.[7] That holding cuts against defendant on this record.

---

[7] In *Hale*, the Supreme Court did not analyze the statute describing grounds for demurrers, ORS 135.630. Rather, the court affirmed that an indictment

In this case, as in *Hale*, the record would support multiple incidents of the relevant crime generically charged, here, either sodomy or sexual abuse. However, also as in *Hale*, defendant could have moved to discover the state's election of the specific criminal acts that the state would prosecute at trial, in time for defendant to tailor his defense to those specific incidents.[8] Defendant did file a demurrer before trial but did not later move for the state's election of the specific criminal acts that it would prosecute at trial. That was so even though the state had put defendant on notice at the hearing on the demurrer that it would make its election after it presented its case-in-chief. Because defendant had another avenue to obtain adequate notice of the charges against him, we affirm the trial court's overruling of the demurrer insofar as it was based on lack of notice.

2. *Article VII (Amended), section 5(3), of the Oregon Constitution*

Defendant demurred, in part, based on Article VII (Amended), section 5(3). He asserted in the trial court that the indictment was defective because it was not based on facts found by the grand jury. On appeal, defendant again argues that the sodomy and sexual-abuse counts in the indictment were not tied to any particular criminal act and that the prosecutor wrongly asserted that the state could charge him with several indefinite counts based on a larger set of criminal acts presented to the grand jury and then make an election of specific criminal acts after the state had

---

pleaded in the words of the statute is "sufficient" in the usual case, 335 Or at 621, implying that indictments pleaded in the words of the statute are generally not subject to demurrer. The court did not explain why, under the statutory scheme concerning demurrers, if a defendant establishes that an indictment fails to provide sufficient notice, the defendant is not entitled to allowance and to the remedy prescribed by the legislature through ORS 135.670: dismissal of the indictment, with possible leave to refile. The court did not articulate why, in light of that statutory scheme, a defendant whose demurrer is denied is not entitled to relief on appeal unless he also moved to compel the state to elect a specific incident or requested special jury instructions.

[8] We note that the court's suggestion in *Hale* of "later" actions, 335 Or at 621, could imply that a defendant can take action at trial, but elucidation of the state's precise theory at trial does not cure the problem of a lack of pre-trial notice, given that such notice is essential to pre-trial investigation, trial preparation, and litigation of evidentiary issues. Thus, we do not view *Hale* as impeding a defendant from filing a motion for the state's election early in the case.

already put on its case and decided what facts it had proved at trial. At base, defendant argues that no one knew what the grand jury intended to charge in each count, thereby placing the discretion to charge him with felonies in the hands of the district attorney in violation of Article VII (Amended), section 5(3).

Article VII (Amended), section 5(3), provides, in part, that "a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury." Section 5(3) is the "state analogue of the Grand Jury Clause of the Fifth Amendment." *State v. Reinke*, 354 Or 98, 105, 309 P3d 1059, *modified on recons*, 354 Or 570, 316 P3d 286 (2013). Section 5(3) provides a criminal defendant with "the constitutional right to be tried only for the specific criminal act as to which the grand jury handed down the indictment." *State v. Long*, 320 Or 361, 370 n 13, 885 P2d 696 (1994), *cert den*, 514 US 1087 (1995).

The Oregon Supreme Court has repeatedly explained that "the constitutional purposes of requiring an indictment by a grand jury" are threefold:

"(1) to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction."

*State v. Smith*, 182 Or 497, 500-01, 188 P2d 998 (1948); *accord State v. Pachmayr*, 344 Or 482, 490, 185 P3d 1103 (2008); *State v. Wimber*, 315 Or 103, 115, 843 P2d 424 (1992). The Supreme Court also has noted that the grand jury's role serves "as a check on the power of the district attorney." *State v. Kuznetsov*, 345 Or 479, 484, 199 P3d 311 (2008).

The state does not contend that defendant's challenge to the indictment under Article VII (Amended), section 5(3), is procedurally defective—that is, that the challenge is not one that can be made through a demurrer. In fact, the

state asserts that defendant's challenge to the rulings on the demurrer and the motion for judgment of acquittal present the same legal questions. Accordingly, we assume, without deciding, that such a challenge can be made by demurrer. On the merits of defendant's constitutional challenge to the indictment, we conclude that we are bound by the Supreme Court's decision in *Wimber*. Accordingly, we describe *Wimber* in some detail.

In *Wimber*, the court considered and rejected the same argument that defendant in this case now makes. The defendant was charged with 12 counts of sex crimes: three counts of sodomy, three counts of rape, and six counts of sexual abuse. 315 Or at 105. The defendant demurred to the indictment, arguing that all of the counts alleged time-barred conduct under the applicable statutes of limitation. *Id.* at 106. Although the state argued that the demurrer was untimely and that all counts should be tried, the trial court instead amended the indictment. *Id.* at 106-07. In three of the six counts of sexual abuse, the court changed the time period during which the criminal conduct was alleged to have been committed so that the period fell entirely within the period covered by the statute of limitation. Specifically, the indictment originally charged that the crimes had occurred between January 1984 and November 1989; however, the trial court modified the indictment so that it charged crimes that occurred between January 1987 and November 1989. *Id.* at 121 (Unis, J., dissenting). In the other three counts of sexual abuse, the court changed the time period to fall entirely outside the limitation period. *Id.* at 107. The jury found the defendant guilty of all counts of sexual abuse. *Id.* at 108. The court vacated the verdicts on the three "untimely" sexual abuse counts but sentenced the defendant on the other three counts of sexual abuse. *Id.*

On appeal, the Supreme Court examined whether the trial court's amendment of the indictment—the shortening of the time period stated in the three counts of sexual abuse on which the defendant was sentenced so that all alleged criminal conduct fell within the applicable limitation period—altered the substance of the indictment. *Id.* at 113-14. The court concluded that the trial court's amendment was permissible and that the "constitutional purposes

of requiring an indictment by grand jury were met," noting that no "new or different theory, element, or crime was added." *Id.* at 115.

Most significantly for purposes of this case, the court in *Wimber* rejected the defendant's argument that the grand jury might have had in mind only acts that occurred during the period of time that fell outside the limitation period, that is, the period of time that the trial court excised from the indictment. *Id.* at 115, 115 n 21. The court did so in the face of the state's acknowledgment that "the grand jury could have found that the offenses charged" all occurred from 1984 to 1987, that is, "exclusively outside the statute of limitations." *Id.* at 121-22 (Unis, J., dissenting).[9] The majority of the court in *Wimber* stated the following rationale:

> "Because those counts charged that the crimes occurred between January 25, 1984, and November 27, 1989, defendant's argument is inconsistent with the language of the indictment. Neither defendant nor this court is free to look behind or disregard that language."

*Id.* at 115 n 21. That rationale suggests that the majority in *Wimber* assumed that the grand jury decided to indict the defendant for at least some of the criminal acts that occurred later during the time period specified in the indictment, within the statute of limitation.

We recognize that, more recently, the Supreme Court in *Pachmayr* addressed an amendment to an indictment during trial and that the reasoning in *Pachmayr* is somewhat in tension with the reasoning in *Wimber*. In *Pachmayr*, the state amended the indictment at the close of the state's case-in-chief so that, instead of alleging assault by means of a "deadly weapon," it alleged assault by means of a "dangerous weapon." 344 Or at 485. Addressing whether the amendment was one of substance or form, the Supreme Court reiterated that the grand jury's "role in the criminal process is independent of the district attorney's role, and

---

[9] Justice Unis criticized the majority's conclusion, stating that "the majority allows the trial court to speculate as to what was in the minds of the grand jury at the time that they returned the indictment, thereby depriving defendant of a basic protection that the constitutional guaranty of the intervention of a grand jury was designed to secure." *Id.* at 123 (Unis, J., dissenting).

serves a critical function in protecting civil liberties." *Id.* at 495. The court also addressed whether the amendment so changed the indictment that it became a charge by the prosecutor, referring in part to Justice Unis's dissent in *Wimber*, in which he expressed concerns that the amendment of the indictment in that case violated Article VII (Amended), section 5. *Id.*

The Supreme Court in *Pachmayr* was careful to explain that it was not making "assumptions" about what the grand jury "'actually' intended to charge" in the count of the indictment that was amended, by looking at the other two counts. *Id.* Rather, the court explained, it knew "without speculating," *from the terms of the count in question,* that the grand jury "necessarily certified that it found sufficient evidence to charge defendant with assault with a dangerous weapon." *Id.* The court explained that the allegations in the original indictment were sufficient to state that the defendant had used the instrumentality—a car—under circumstances that rendered it capable of causing death or serious injury, *i.e.*, as a dangerous weapon. *Id.* at 492-93. Thus, the court was satisfied that the "the grand jury, not the prosecutor, determined the charge to be brought and found the facts on which the charge was based." *Id.* at 495; *cf. Burnett,* 185 Or App at 416-17 (holding that the trial court erred in denying the defendant's motion in arrest of judgment, when the indictment lacked a material element and it was not apparent that "the grand jury based the indictment on facts that satisfy this element of the crime," and that the only permissible cure was to send the matter back to the grand jury).

The change in the indictment addressed in *Pachmayr* does not present the precise issue in this case. However, the court's reasoning in *Pachmayr,* particularly its close examination of the wording of the indictment and its avoidance of assumptions about the grand jury's determination of the charge to be brought, could suggest that it is improper for a court to make assumptions about the particular subset of criminal acts for which the grand jury indicted a defendant. However, the court in *Pachmayr* did not expressly disapprove of the *Wimber* majority's rationale for rejecting the defendant's "grand jury indictment" argument or question any part of *Wimber.* Although each of the counts of sodomy

and sexual abuse contained in the indictment in this case is as obscure as the next in terms of notifying defendant of the specific criminal act for which the grand jury intended to indict him, in light of *Wimber*, it appears that we are to assume that the indictment in this case included the criminal acts that the victim described at trial and that the state previously had presented to the grand jury. As a result, just as in *Wimber*, no "new or different theory, element, or crime was added" to the indictment. Thus, pursuant to *Wimber*, the indictment did not offend Article VII (Amended), section 5(3). We therefore conclude that the trial court did not err in denying defendant's demurrer insofar as it was based on Article VII (Amended), section 5(3).

B. *Motion for judgment of acquittal and jury instructions*

Defendant's motion for judgment of acquittal on the sodomy and sexual abuse counts, and his congruent objections to the jury instructions, were based on the arguments that he made when objecting to the state's election. Those arguments are that (1) he was denied adequate notice of the charges against him; (2) the counts on which he was tried were never specified by the grand jury; and (3) the state improperly amended the original indictment.

For the same reasons discussed above, we affirm the trial court's rulings. Again, although defendant lacked adequate notice of the charges against him, his lack of notice was something that he should have attempted to cure by moving to require the state to make its election before trial. And, as noted, the Supreme Court in *Wimber* rejected the same "grand jury indictment" argument based on Article VII (Amended), section 5(3), that defendant now makes.

As for his third argument, defendant assumes that the indictment in this case actually was amended, although there was no actual change to the charging instrument itself. The state does not dispute defendant's assumption and instead argues that the amendment was "merely an alteration in form" that narrowed the indictment handed down by the grand jury. Assuming that the state or the trial court effectively amended the grand jury indictment when the state made its election and the trial court instructed the jury on each count accordingly, we conclude that, based

on *Wimber*'s multi-factored test, the amendments were not improper.

The Supreme Court explained in *Wimber* that, under Article VII (Amended), section 5, amendments to indictments concerning matters of substance must be made by the grand jury, whereas the trial court can amend a matter pertaining to form. The court announced a four-part inquiry for assessing the distinction between form and substance:

"(1)   Did the amendment alter the essential nature of the indictment against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime? * * *

"(2)   Did the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy? * * *

"(3)   Was the amendment itself sufficiently definite and certain? * * *

"Because the amendment deleted allegations, we ask one additional question.

"(4)   Did the remaining allegations in the indictment state the essential elements of the offenses? * * *"

*Wimber*, 315 Or at 114-15.

Here, as to the first question, the amendment did not alter the essential nature of the indictment against defendant or add a new theory, element, or crime. Both the grand jury and the petit jury heard similar evidence of the multiple acts of sexual abuse and sodomy that occurred during the date range specified in the indictment. Before the state's elections, the indictment alleged four counts of sexual abuse and four counts of sodomy during a specified time frame. It did the same after those elections. And, the amendment did not alter the availability of defenses or evidence. Nothing at trial or in pretrial motions suggested that defendant had an alibi defense for some incidents or otherwise had evidence that would make the occurrence of any particular incident of criminal conduct less probable than any other. As to the questions whether the amendment prejudiced defendant's right to notice and to protection against double jeopardy and

whether it was sufficiently definite and certain, the amendment clarified the charges against defendant and thereby increased the level of notice and protection against double jeopardy afforded to him. Finally, as in *Wimber*, the indictment was actually narrowed by the amendment, 315 Or at 115, and continued to allege all the elements of each crime. Thus, any amendment of the indictment was not substantive.

## III. CONCLUSION

We affirm the trial court's overruling of the demurrer because defendant could and should have discovered the state's election of the criminal acts it would prosecute before trial and because, pursuant to *Wimber*, the state's election of criminal acts it was prosecuting at trial did not introduce a new theory, element, or crime. For the same reasons, we affirm the trial court's denial of defendant's motion for judgment of acquittal. And, we reject defendant's theory that the jury instructions improperly amended the indictment.

Affirmed.