Argued and submitted March 13, 2018, reversed April 15, 2020

JEREMY EMIL ANTOINE,
*Petitioner-Respondent,*

*v.*

Jeri TAYLOR,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Appellant.*

Umatilla County Circuit Court
CV151728; A163943

465 P3d 238

The superintendent of the Eastern Oregon Correctional Institution appeals a judgment that granted petitioner post-conviction relief. In petitioner's direct appeal, *State v. Antoine*, 269 Or App 66, 344 P3d 69, *rev den*, 357 Or 324 (2015) (*Antoine I*), the Court of Appeals clarified that the burden is on defendants to seek pretrial elections to obtain adequate notice of the charges against them when the state's indictment and pretrial discovery is insufficient. The post-conviction court therefore concluded that petitioner's trial counsel performed deficiently by failing to move to require the state to make a pretrial election as to the criminal acts it intended to prosecute and that trial counsel's deficiency prejudiced petitioner. On appeal, the superintendent argues that the post-conviction court's deficiency and prejudice determinations were erroneous and contends that petitioner was not entitled to post-conviction relief. *Held*: Petitioner failed to demonstrate that trial counsel failed to exercise reasonable professional skill and judgment by failing to move for a pretrial election. Trial counsel did not have the benefit of *Antoine I* at the time of petitioner's trial, and petitioner failed to establish that, given the state of the law at the time of his trial, constitutionally competent counsel would have understood then that he should have made an argument insisting on a pretrial election by the state. Accordingly, the post-conviction court erred in granting petitioner's petition for relief.

Reversed.

J. Burdette Pratt, Senior Judge.

Doug M. Petrina, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Lindsey Burrows argued the cause for respondent. Also on the brief was O'Connor Weber LLC.

Before Aoyagi, Presiding Judge, and Egan, Chief Judge, and Linder, Senior Judge.*

EGAN, C. J.

Reversed.

_____

* Egan, C. J., *vice* Hadlock, J. pro tempore.

**EGAN, C. J.**

The superintendent of the Eastern Oregon Correctional Institution appeals the post-conviction court's judgment vacating petitioner's convictions and remanding the case for further proceedings. The post-conviction court granted relief on the ground that the failure of petitioner's trial counsel to move for the state to elect the criminal acts it intended to prosecute before the start of trial constituted ineffective assistance of counsel, in violation of petitioner's rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.

The superintendent assigns error to the post-conviction court's rulings on petitioner's claims. The superintendent argues that petitioner failed to establish (1) that a reasonable attorney, at the time of petitioner's trial, would have moved for a pretrial election and (2) that petitioner was prejudiced by trial counsel's failure to move for a pretrial election.

We conclude that petitioner did not establish that his trial counsel failed to exercise reasonable professional skill and judgment. Therefore, the post-conviction court erred in its grant of relief to petitioner.[1] Accordingly, we reverse.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

We begin with the undisputed facts of the proceedings that gave rise to the claims on which the post-conviction court granted relief.

### A. *Underlying Criminal Proceedings*

The charges against petitioner "arose from allegations of the young daughter of [petitioner's] former girlfriend. The victim reported that [petitioner] had, on multiple different occasions, engaged in various sexual acts with her" over a two-year period when petitioner was living with the

---

[1] Because we conclude that the post-conviction court erred in its determination that petitioner established that his trial counsel was inadequate, and petitioner must prove both inadequacy and prejudice to prevail, we do not reach the issue of prejudice.

victim and her mother. *State v. Antoine*, 269 Or App 66, 68, 344 P3d 69, *rev den*, 357 Or 324 (2015) (*Antoine I*). A grand jury indicted petitioner on nine felonies: four counts of first-degree sodomy; four counts of first-degree sexual abuse; and one count of furnishing explicit material to a child. *Id.* at 68-69. Each charge was pleaded in the statutory wording of the relevant ORS provision and did not include specifics about the particular set of facts to which each allegation related.[2] After petitioner was indicted, the state provided him with "84 pages of documents and six compact discs in discovery. * * * The discovery indicated that the victim had reported a greater number of criminal sexual acts than were alleged in the indictment." *Id.* at 70.

Petitioner filed a demurrer under ORS 135.630(2)[3] contending that, even in combination with the discovery from the state, the indictment was not sufficiently definite and certain as required by ORS 132.550(7).[4] Petitioner argued that "the indictment's counts * * * were not tied to specific facts and the discovery disclosed that the counts charged in the indictment were but a subset of the number of criminal acts that the victim had reported." *Id.*

The state opposed the demurrer and argued that "the state could adequately resolve the problem by making an election of the specific criminal acts for which it would seek convictions at trial." *Id.* at 70. The state described the purpose of an election as ensuring that all the jurors consider the same incident for each charge during deliberations. The state indicated that it would make its election after presenting its case-in-chief, and petitioner did not object to that timing during the hearing on the demurrer.

---

[2] Each of the nine charges alleged "[t]hat as a separate act and transaction from [each of the other counts]: The defendant, on or between September 1, 2006, and October 1, 2008, in Washington County, Oregon, did" commit the alleged conduct with the requisite state of mind.

[3] ORS 135.630(2) provides that a criminal defendant may demur to an indictment that does not substantially conform to the requirements of, among other statutes, ORS 132.510 to 132.560.

[4] ORS 132.550(7) requires that an indictment substantially contain a "statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended."

The trial court concluded that the indictment was sufficient and overruled the demurrer in a letter opinion. The court also explained that, "[w]hen the prosecution makes its election during the course of trial, it must only choose to rely upon factual incidents relied upon by the grand jury in returning the indictment." *Id.* at 71.

Petitioner moved for an order requiring the state to disclose grand jury notes because there was discovery evidence that indicated that the acts alleged by the victim may not have corresponded with the charges in the indictment. The state responded that the grand jury had "selected a subset of incidents of abuse for the indictment" and that the "particular counts [in the indictment] were not tied to particular factual incidents that occurred. In other words, they're representative samples of broader abuse that occurred." *Id.* at 72-73. The state also reiterated both that it would make its election at the close of its case-in-chief and that jury concurrence was the reason for such an election. Petitioner again did not object to the timing of the state's election. The trial court denied petitioner's motion for disclosure of grand jury notes.

At trial, the victim testified to multiple instances of petitioner making her watch pornography, touching her "private part" or making her touch his "private part" in different rooms of the house. Petitioner's defense theory was that the abuse did not happen, or, if it did, that he was not the abuser. After presenting its case-in-chief, the prosecutor made the following elections:

> "Count 1, Sodomy in the First Degree, that will relate to an incident described in the evidence as penis to mouth in the master bedroom. Count 2 is the penis to mouth incident in the computer room, Count 3, penis to mouth incident in the bunk bed room, Count 4, mouth to vagina incident in bunk bed room, Count 5, touching that occurred in the master bedroom, Count 6, the master bedroom on another occasion, Count 7, the computer room, Count 8, bunk bed room, Count 9, a time in the computer room."

Petitioner moved for a judgment of acquittal on all eight of the sodomy and sexual abuse counts after the state's

election.[5] *Id.* at 74. Petitioner contended that the state's method of charging and subsequent election resulted in a trial on counts never specified by a grand jury and the denial of petitioner's right to notice of the exact charges against him. *Id.* The state acknowledged that the indictment was not tied to specific incidents, but it asserted that the grand jury had properly considered the factual information. *Id.* The trial court denied petitioner's motion. *Id.* at 75.

To address the problem of the nonspecific and repeated statutory language in the charges, the trial court added descriptors to the jury instructions that matched the state's elections (*e.g.*, "Sexual Abuse in the First Degree, Count 5, master bedroom."). *Id.* Petitioner objected to the additional wording as an improper amendment to the indictment because it was not presented to the grand jury, and "he took exception to the identifying language that the court added." *Id.*

The jury found petitioner guilty on all nine counts. *Id.* Petitioner appealed his convictions, assigning error to the trial court's adverse rulings on his demurrer, motion for judgment of acquittal, and objection to the jury instructions. *Id.* at 68. On appeal, we affirmed. *Id.* at 86.

In our analysis, we "agree[d] with [petitioner] that the indictment itself did not provide him with sufficient notice, and the problem with inadequate notice, which arose before trial, was not cured during trial." *Id.* at 76. However, we concluded that the trial court had not erred in overruling petitioner's demurrer or denying his motion for judgment of acquittal. *Id.* at 86. We reasoned that petitioner's "lack of notice was something that he should have attempted to cure by moving to require the state to make its election before trial." *Id.* at 84. A pretrial election would have allowed petitioner to have the information "in time for [him] to tailor his defense to those specific incidents."[6] *Id.* at 79. Further, we

---

[5] Petitioner had already unsuccessfully moved for a judgment of acquittal on Count 9, furnishing sexually explicit material to a child. *Antoine I*, 269 Or App at 74 n 5.

[6] We also rejected petitioner's arguments that the jury instructions improperly amended the indictment or prejudiced petitioner's right to notice or protection against double jeopardy. *Antoine I*, 269 Or App at 85-86.

interpreted the Supreme Court's decision in *State v. Hale*, 335 Or 612, 75 P3d 448 (2003), *cert den*, 541 US 942 (2004), as "plac[ing] the burden on a defendant to attempt to procure adequate and timely notice of the charges against him, even when an indictment that is alleged in the words of the statute does not provide such notice." *Antoine I*, 269 Or App at 78.

B.   *Post-Conviction Proceedings*

Thereafter, petitioner initiated this post-conviction proceeding. He alleged that his trial counsel was inadequate and ineffective for not moving for the state to make a pretrial election, both to give petitioner the required notice of the charges against him and to preserve the issue for appellate review.

The post-conviction court concluded that our opinion in *Antoine I* "compel[led] a finding" in favor of petitioner, and the court granted relief. The post-conviction court reasoned that, because we determined that petitioner "could have and should have moved for the state to elect the criminal acts it wished to prosecute before the start of trial," petitioner's trial counsel was ineffective and inadequate for failing to do so. Additionally, the post-conviction court determined that the deficiency prejudiced petitioner because, had his trial counsel moved for a pretrial election, petitioner would either have been provided with the proper notice if the motion were granted or his conviction would have been reversed if the motion were denied.

The superintendent appeals. The superintendent assigns error to the post-conviction court's grant of relief and contends that the court erred in ruling that petitioner's trial counsel was ineffective and inadequate for failing to move for a pretrial election. The superintendent argues both that petitioner's trial counsel's performance was not deficient and that petitioner did not prove prejudice.

## II.   STANDARD OF REVIEW AND APPLICABLE LEGAL FRAMEWORK

We review a post-conviction court's grant or denial of relief for legal error, and we accept the court's factual

findings if there is evidence in the record to support them. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). If the post-conviction court did not make findings as to all the facts pertinent to our analysis, we will presume that the court found the facts consistently with its conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). That presumption, however "is necessarily dependent on the trial court's application of the correct legal analysis. If the court is operating under a misunderstanding as to the applicable legal principles * * * we will not infer that the court decided facts consistently with that erroneous legal construct." *State v. Ellis*, 252 Or App 382, 390, 287 P3d 1215 (2012), *rev den*, 353 Or 428 (2013).

Criminal defendants have a constitutional right to counsel under Article I, section 11, and under the Sixth Amendment. *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). A criminal defendant may bring a claim contending that he has been deprived of his constitutional right to counsel under both the state and federal constitutions.

To prevail under Article I, section 11, a petitioner must prove two elements: (1) that trial counsel "failed to exercise reasonable professional skill and judgment" and (2) that "petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). The two-element standard under the Sixth Amendment is functionally equivalent. *Id.* To prevail on a Sixth Amendment claim, a petitioner must establish both that "trial counsel's performance 'fell below an objective standard of reasonableness,'" and also that "there was a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 700 (quoting *Strickland v. Washington*, 466 US 668, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984)).[7]

A criminal defendant is not entitled to perfect representation but instead to a reasonably competent attorney:

---

[7] Neither party suggests that, with respect to the claims at issue in this case, the Sixth Amendment standard regarding the alleged ineffectiveness of counsel differs from the Oregon standard that we have discussed. Accordingly, our analysis applies to the claims under both constitutions.

"Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 US 86, 110, 131 S Ct 770, 178 L Ed 2d 624 (2011).

In reviewing the adequacy of trial counsel's representation, a post-conviction court must consider "the lawyer's perspective at the time," without the benefit of hindsight. *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002). Moreover, the post-conviction court should determine "whether the strategy that defense counsel did employ was reasonable" rather than focusing only on the possible benefits of strategies that trial counsel did not pursue. *Pereida-Alba v. Coursey*, 356 Or 654, 674, 342 P3d 70 (2015); *see Montez*, 355 Or at 24 ("The fact that petitioner would, in retrospect, have implemented his * * * defense in one or more different ways is not a ground for post-conviction relief if counsel acted reasonably in presenting the defense that they did."). We review the post-conviction court's decision with those principles in mind.

The post-conviction court concluded that petitioner's trial counsel was ineffective because he failed to move for a pretrial election. Because we must evaluate counsel's performance according to the law at the time of the trial, *see Burdge v. Palmateer*, 338 Or 490, 498, 112 P3d 320 (2005) ("[W]e look at the [law] as a lawyer would have seen it at the time."), we begin with an overview of the role of motions for elections in Oregon criminal trials. We preface our description of the evolution of the law by noting our recent acknowledgment that, "[u]nfortunately, the term 'elect' and 'motion to elect' have been used in caselaw to refer to different motions, made for different purposes, at different stages of litigation, potentially resulting in confusion." *State v. Payne*, 298 Or App 411, 413, 447 P3d 515 (2019).

A.  *Elections: Case Law Before Petitioner's Trial*

Petitioner's trial took place in 2011. At that time, as the post-conviction court recognized, the leading case on addressing notice problems created by statutorily worded indictments was *Hale*, which was decided in 2003.

In *Hale*, the defendant was charged with 13 counts of aggravated murder and other noncapital crimes. The defendant

"demurred to the form of the indictment * * * on the ground that the six aggravated murder counts that alleged that he had committed murder to conceal the crime of third-degree sexual abuse and to conceal the identity of the perpetrator of the crime of third-degree sexual abuse * * * were impermissibly vague."

335 Or at 617-18.

The defendant argued that he was "entitled to notice of the particulars of the offenses he [was] alleged to have committed" and that, because the indictment did not specify the victims of the offense, there were "three decedents who [were] all potential victims of that crime." *Id.* at 618. The trial court denied the demurrer. *Id.* at 619. The Supreme Court affirmed the trial court and concluded that the defendant was not "entitled to require the state to make the indictment more definite and certain" through demurrer. *Id.* at 620-21. The court "agree[d] with [the] defendant that * * * defendant was entitled to know the state's precise theory of the case and the facts and circumstances the state was relying on to support the aggravated murder counts." *Id.* However, the court did not agree that demurrer was the "proper (or only) vehicle for ensuring" that the defendant had appropriate notice. *Id.* at 621. The court noted that the "[d]efendant had other avenues available to him for acquiring that information, such as later moving the court to require the state to elect a specific incident * * * or requesting special jury instructions to clarify the matter." *Id.*

Thus, in *Hale*, the Supreme Court described options that a defendant could pursue to procure notice when the indictment was not sufficiently precise to determine which of multiple possible facts and circumstances supported a charge: A defendant could make a motion for the prosecution to elect a specific incident or request a jury concurrence instruction. The *Hale* court did not specify whether "later moving the court" to require an election referred to a pretrial election or an election during the course of trial. The most natural understanding of that reference, however,

would be a motion made after the pretrial stage of the proceedings. Moreover, the other option that the court listed, a jury concurrence instruction, serves the same function as an end-of-trial election, ensuring that the jury "concurs on the same occurrence in reaching a verdict on a single count of a charged crime." *Payne*, 298 Or App at 421. That reference, too, suggested that the proper timing of a motion to elect was after the pretrial stage.

In 2007, this court addressed prosecutorial elections, affirming a trial court's denial of a defendant's motion for a pretrial election. *State v. Magana*, 212 Or App 553, 565, 159 P3d 1163 (2007). In *Magana*, the defendant argued on appeal that his ability to defend himself was prejudiced because the trial court denied his motion for a pretrial election. *Id.* We noted that "the timing of any election is within the discretion of the trial court: '*** No statute of this state prescribes the time when an election must be made.'" *Id.* at 564 (quoting *State v. Kibler*, 1 Or App 208, 212, 461 P2d 72 (1969)) (internal citations omitted; alteration in original). We also described the interests that a trial court balances when ruling on a motion for an election: "'[T]he rule governing election is flexible so that the state will not be forced to make a choice when it cannot intelligently do so, but which will afford the defendant sufficient time, after the choice has been made, to defend himself properly.'" *Id.* at 565 (quoting *State v. Lee*, 202 Or 592, 607, 276 P2d 946 (1954)) (alteration in original).

B.  *Elections: Case Law After Petitioner's Trial*

In 2015, in *Antoine I*, we interpreted *Hale* to place an affirmative duty on criminal defendants to obtain the notice to which they are entitled, and we indicated that a defendant should attempt to remedy his lack of notice "by moving to require the state to make its election before trial." 269 Or App at 80. No prior case, from either this court or the Supreme Court, had held or otherwise explicitly suggested that such a motion should be made pretrial. And *Antoine I* was, as we have described, the direct appeal of petitioner's criminal convictions. Thus, the guidance we gave in *Antoine I* was not available to petitioner's criminal trial counsel at the time of petitioner's criminal trial.

Four years later, we further clarified the types and timing of motions for election. *See Payne*, 298 Or App at 416, 421. We explained in *Payne* that a defendant may make a motion to require a prosecutor to elect a single factual occurrence that forms the basis for an individual charge at two different stages of litigation: (1) pretrial or early in the proceedings or (2) after the prosecutor's case-in-chief or at the close of arguments. *Id.* Each of the aforementioned timing options serves a different purpose. A defendant may move for a prosecutor to make a pretrial election to get more information about a charge against him when the "indictment is sufficient to withstand a demurrer but still may fail to give a defendant adequate notice of the precise charges against him." *Id.* at 417. In contrast to a pretrial election motion, a defendant may move for the prosecutor to make an election after the prosecutor's case-in-chief or at the end of the trial to "ensure that the jury agrees as to every necessary element or concurs on the same occurrence in reaching a verdict on a single count of a charged crime." *Id.* at 421.

### III.  COUNSEL'S PERFORMANCE IN PETITIONER'S DEFENSE

We turn to trial counsel's actions in this case. Again, when reviewing a claim of ineffective assistance of counsel, we determine whether petitioner "demonstrated by a preponderance of the evidence that [his lawyer] failed to exercise reasonable professional skill and judgment." *Lichau*, 333 Or at 359. As noted above, in making our determination, we "make every effort to evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight." *Id.* at 360. "If a lawyer exercising reasonable professional skill would have recognized the existence of an issue and would have concluded under the circumstances that the benefits of raising it outweighed the risks of doing so, failing to raise the issue may constitute inadequate assistance of counsel." *Krieg v. Belleque*, 221 Or App 36, 40, 188 P3d 413, *rev den*, 345 Or 317 (2008). When, as here, the law was unsettled regarding the issue trial counsel did not raise, "we must consider whether 'the benefits of raising [the] issue [were] so obvious that any lawyer exercising reasonable professional skill and judgment would do so.'" *Garner v. Premo*, 283 Or App 494, 507, 389 P3d 1143,

*rev den*, 361 Or 885 (2017) (quoting *Ross v. Hill*, 235 Or App 340, 344, 231 P3d 1185, *rev den*, 349 Or 56 (2010)) (second brackets in original).

Petitioner's trial counsel first raised the issue of notice by filing a demurrer to the charges against petitioner, contending that the indictment was not sufficiently definite and certain, even in combination with discovery from the state. *Antoine I*, 269 Or App at 70. During the hearing on petitioner's demurrer, the prosecutor described an end-of-trial election as the solution to the issue raised by petitioner's demurrer. *Id.* The trial court's letter opinion explaining its decision overruling petitioner's demurrer stated that "when the prosecution makes its election during the course of trial, it must only choose to rely upon factual incidents relied upon by the grand jury in returning the indictment." According to trial counsel's affidavit, offered during the post-conviction proceeding, he interpreted the court's letter opinion as ruling that the state would be allowed to make its election during, instead of before, the trial.

When the trial court overruled petitioner's demurrer, petitioner was left in the situation described in *Hale*: charged under an indictment that was sufficient to survive demurrer but insufficient to give him notice of which factual circumstances the state would rely on for each charge. Consequently, trial counsel moved for an order requiring the state to disclose grand jury notes to clarify what factual circumstances the grand jury had based each charge on. *Antoine I*, 269 Or App at 71-72. When that was unsuccessful, trial counsel moved for a judgment of acquittal, again arguing that the notice was insufficient. Although the motions that petitioner's trial counsel made were unsuccessful, they show that he was aware of and attempting to remedy the notice issue.[8] At the end of the state's case-in-chief, the

---

[8] The Oregon Supreme Court has acknowledged that seeking clarity about the facts and circumstances on which the grand jury based its finding of probable cause and alignment between those facts and the charges in the indictment is one way to obtain sufficient notice. *See Hale*, 335 Or at 618 (defendant sought notice by challenging the indictment as impermissibly vague and asking the court to send the matter back to the jury for clarification of the facts and circumstances underlying the charge); *see also State v. Lotches*, 331 Or 455, 465-66, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001) (defendant argued on direct review that the trial court should have stricken charges *sua sponte* when the indictment

prosecution made its election. *Id.* at 74. Additionally, the trial court instructed the jury on the factual occurrence on which each charge was based. *Id.* at 75.

Petitioner argues that *Antoine I* did not announce new law. But it did. Before that opinion, the Supreme Court, in *Hale*, had identified only two remedies, other than demurrer, that a defendant might seek to obtain adequate notice: (1) requiring the prosecutor to make an election at an unspecified later time and (2) requesting jury instructions on the factual occurrence on which each charge was based. Trial counsel's actions resulted in petitioner receiving both of those remedies. Our decision in petitioner's direct appeal in *Antoine I* clarified that the burden is on defendants to seek pretrial elections to obtain adequate notice of the charges against them, but that holding provided no guidance to defense counsel at the time of petitioner's trial. Petitioner nevertheless contends that, after the court issued its letter opinion referencing a prosecutorial election during the course of trial, his trial counsel should have made a motion to require the state to make a pretrial election. To be sure, a reasonable defense attorney *could* have moved to require the prosecutor to make a pretrial election, "[b]ut the question in this post-conviction case is whether a reasonably competent defense attorney *would* have made that argument under the circumstances in this case." *Hagberg v. Coursey*, 269 Or App 377, 387, 344 P3d 1118, *rev den*, 358 Or 69 (2015) (emphasis added).

The circumstances here include the state of the law after the Supreme Court's opinion in *Hale* and our subsequent holding in *Magana* that the timing of prosecutorial elections is within the discretion of the trial court, the trial court's letter opinion describing the prosecutor's election as occurring "during the course of trial," and the actions that trial counsel did take. Petitioner's counsel, believing that the trial court had granted the state's motion to make its election during the course of trial, attempted to procure sufficient notice (1) through a motion for disclosure of grand jury

---

failed to sufficiently state particular facts and circumstances; the Supreme Court noted that the defendant would have been entitled to require specification if he had raised the issue at trial).

notes and (2) by moving for a judgment of acquittal after the state's election at the end of the state's case-in-chief.

Given the state of the law at the time of petitioner's trial, especially *Hale*, petitioner has not established that constitutionally competent counsel would have understood then that he should have made an argument insisting on a pretrial election by the state or that there was an obvious benefit to doing so under the circumstances. Therefore, we conclude that the post-conviction court erred in determining that petitioner proved that his trial counsel failed to exercise reasonable professional skill and judgment and granting relief under the Oregon and United States Constitutions. Because we conclude that the post-conviction court erred as to counsel's performance, we do not reach the issue of prejudice.

Reversed.