Argued and submitted April 29; decision of Court of Appeals affirmed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings November 24, 2021

JEREMY EMIL ANTOINE,
*Petitioner on Review,*

*v.*

Jeri TAYLOR,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent on Review.*

(CC CV151728) (CA A163943) (SC S067870)

499 P3d 48

Petitioner sought post-conviction relief, contending that his trial counsel had provided inadequate assistance by challenging the adequacy of pretrial notice provided by the indictment through a demurrer rather than a motion to compel a pretrial election. The post-conviction court granted relief, but the Court of Appeal reversed, holding that trial counsel's performance was not deficient. *Held*: (1) Trial counsel's performance was not deficient, given the state of the law at the time of defendant's trial, and (2) the post-conviction court erred in granting relief.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Lindsey Burrows, O'Connor Weber LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Doug Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices.**

_____

* On appeal from Umatilla County Circuit Court, J. Burdette Pratt, Judge. 303 Or App 485, 465 P3d 238 (2020).

** Nakamoto, J., did not participate in the consideration or decision of this case.

NELSON, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Duncan, J., filed a concurring opinion.

**NELSON, J.**

This is a post-conviction case in which petitioner claims that his trial counsel provided inadequate assistance. At petitioner's criminal trial for multiple counts of first-degree sexual abuse and first-degree sodomy, his counsel raised a set of challenges to the validity of the indictment and to the manner in which the case had been charged. Counsel argued that the indictment failed to provide adequate notice of the basis for the charges against petitioner and otherwise was defective. Petitioner was convicted and, on appeal, the Court of Appeals affirmed his convictions. Although the Court of Appeals rejected some of petitioner's challenges to the indictment on the merits, it held that petitioner's claims about inadequate notice should not have been raised in a demurrer and, instead, that petitioner "could have moved to discover the state's election of the specific criminal acts that the state would prosecute at trial, in time for [him] to tailor his defense to those specific incidents." *State v. Antoine*, 269 Or App 66, 79, 344 P3d 69, *rev den*, 357 Or 324 (2015) (*Antoine I*).

Petitioner later filed this post-conviction challenge, alleging that trial counsel provided inadequate assistance by failing to move for a pretrial election. The post-conviction court granted relief, but the Court of Appeals reversed that decision, holding that trial counsel had not performed deficiently, given the state of the law at the time of petitioner's trial. *Antoine v. Taylor*, 303 Or App 485, 499, 465 P3d 238 (2020) (*Antoine II*). We allowed review and now affirm the decision of the Court of Appeals.

## I.   BACKGROUND

### A.   *Trial Proceedings*

In 2010, petitioner was charged with four counts of first-degree sodomy, ORS 163.405(1)(b); four counts of first-degree sexual abuse, ORS 163.427(1)(a)(A); and one count of furnishing sexually explicit material to a minor, *former* ORS 167.054 (2009), *repealed by* Or Laws 2011, ch 681, § 10. The victim of those offenses was the child of petitioner's former girlfriend, with whom petitioner had lived for approximately two years.

The indictment was worded as follows. The first count—a sodomy charge—alleged that "[t]he defendant, on or between September 1, 2006 and October 1, 2008, in Washington County, Oregon, did unlawfully and knowingly have deviate sexual intercourse with [the victim], a child under 12 years of age." The other three sodomy charges—counts two, three, and four—used identical text but specified that they each referred to "a separate act and transaction from that alleged" in the prior counts.

The four counts of sexual abuse alleged "[t]hat as a separate act and transaction from that alleged in [the prior counts]: The defendant, on or between September 1, 2006 and October 1, 2008, in Washington County, Oregon, did unlawfully and knowingly subject [the victim], a child under 14 years of age, to sexual contact by touching [the victim's] genitalia, a sexual and intimate part of the child."

The final count alleged "[t]hat as a separate act and transaction from that alleged in Counts 1 to 8: The defendant, on or between September 1, 2006 and October 1, 2008, in Washington County, Oregon, did unlawfully and intentionally furnish and permit [the victim], a child, to view sexually explicit material, defendant knowing that the material was sexually explicit material."

Petitioner's trial counsel demurred to the indictment in July 2010. He argued that the indictment violated applicable statutes and several provisions of the Oregon and United States Constitutions because it failed to provide adequate notice and protection from double jeopardy. He stated that "discovery reveals that there are inconsistent statements throughout as to when or where an act is alleged to have happened and there appear to be some unknown amount of times that it is alleged to have happened." (Footnote omitted.) At a hearing on the demurrer, defense counsel argued that the offenses needed to be pleaded with more specificity and that such a substantive change could only be accomplished by resubmission to the grand jury, rather than by election or additional discovery.

The state argued that the indictment was sufficiently definite, that the inconsistencies in discovery were

not significant, and that any issue would be resolved through an election at the close of the state's case.

The trial court informed counsel that it would take the issue under advisement and issue a short opinion. The court added that it would need to review the discovery in order to evaluate the parties' arguments. The parties agreed to provide the relevant portions of the discovery material to the trial court.

On January 13, 2011, the trial court sent a letter opinion to the parties, overruling petitioner's demurrer. The trial court noted that the police reports relating to the sodomy and sex abuse charges were "relatively brief and manageable" and concluded that they provided sufficient notice. However, the trial court made an additional ruling that,

> "[i]n order to safeguard the constitutional rights of the accused, it is imperative that the petit jury base a finding of guilt on the same conduct that the grand jury has based its probable cause determination. Therefore, when the prosecution makes its election during the course of trial, it must only choose to rely upon factual incidents relied upon by the grand jury in returning the indictment."

(Internal citation omitted.)

Based on that ruling, trial counsel filed another motion, seeking access to the grand jury notes. He argued that he needed to have access to those notes in order to know which factual incidents were the basis for the charges. The trial court ruled that petitioner's motion was premature, as the issue of whether the state's election corresponded to the grand jury's findings would not arise until the state made the election, so it delayed ruling on the motion.

Trial began in March 2011, before a different judge. Before the jury was empaneled, petitioner's trial counsel again raised the grand jury notes issue with the trial court. Trial counsel reported that the prosecutor had recently sent some new statements from the victim, which contained inconsistencies. Trial counsel argued that grand jury notes were necessary in order to cross-examine the witnesses and to evaluate whether the state's election corresponded to what was submitted to the grand jury.

The prosecutor responded that the grand jury had not based its charges on specific factual incidents. Rather, the state had asked the grand jury to charge a "representative sample" of charges from the evidence presented to it. As he explained somewhat later in the hearing, the "grand jury did not consider specific facts related to specific charges." The prosecutor explained his views on election as follows:

> "If we've already at the grand jury stage decided that Count 1 is the time in the kitchen, my election has to be the same. I can't elect it differently. I can't change it in midcourse. That hasn't happened in this case. So I haven't—we haven't been tied to anything yet. So I don't know right now what Count 1 will relate to. I'll elect at the end of my case and the same with Counts 2 through 9."

Petitioner's trial counsel responded by arguing, as he had previously, that that method of charging was improper, stating, "I think the heart of the question here is * * * can a grand jury find generally a violation of a statutory scheme not tied to a specific incident and then allow the prosecution to elect a specific incident that's not necessarily been found by the grand jury."

The trial court denied defendant's motion, and the case proceeded to trial.

At the close of evidence, trial counsel again moved for a judgment of acquittal on all counts, for the same reason that he had earlier, a motion that was again denied. Trial counsel likewise objected to language in the jury instructions corresponding to the state's election.

The jury unanimously convicted petitioner on all counts. He was sentenced to 300 months in prison, followed by lifetime post-prison supervision.

B.  *Appellate Proceedings*

Petitioner appealed. On appeal, he argued that the indictment was constitutionally deficient because it failed to provide him with sufficient notice and that the prosecutor's election had operated as an unconstitutional amendment to the indictment. Like trial counsel, appellate counsel treated those issues as intertwined, focusing on the argument that

the indictment was defective because the grand jury had not based it on specific conduct.

Beginning with the notice issue, the Court of Appeals concluded that the "charging process failed to provide defendant with proper notice of the charges before trial." *Antoine I*, 269 Or App at 77. But the Court of Appeals nonetheless ruled against petitioner on that issue, reading this court's decision in *State v. Hale*, 335 Or 612, 621, 75 P3d 448 (2003), *cert den*, 541 US 942, 124 S Ct 1667, 158 L Ed 2d 366 (2004), to hold that the proper remedy for inadequate pretrial notice was not for a defendant to file a demurrer but for the defendant to seek pretrial clarification through other mechanisms. *Antoine I*, 269 Or App at 78.[1] The Court of Appeals held that "defendant could have moved to discover the state's election of the specific criminal acts that the state would prosecute at trial, in time for defendant to tailor his defense to those specific incidents." *Id.* at 79. In a footnote, the Court of Appeals specified that it did "not view *Hale* as impeding a defendant from filing a motion for the state's election early in the case," though it acknowledged that *Hale* could be read otherwise. *Id.* at 79 n 8.

The Court of Appeals did not, however, view *Hale* as necessarily barring its consideration of petitioner's related argument that the charging of representative counts violated Article VII (Amended), section 5(3). *Antoine I*, 269 Or App at 80-81. The Court of Appeals rejected that argument on the merits. *Id.* at 81-84.

C. *Post-Conviction Proceedings*

Petitioner then filed a petition for post-conviction relief, alleging inadequate assistance of counsel, in violation of Article I, section 11, and the Sixth Amendment, based on trial counsel's failure to move for a pretrial election. In an affidavit submitted by petitioner, trial counsel explained

---

[1] Although the Court of Appeals read *Hale* as so holding, the Court of Appeals expressed some skepticism that that holding was correct, noting that *Hale* "did not explain why, under the statutory scheme concerning demurrers, if a defendant establishes that an indictment fails to provide sufficient notice, the defendant is not entitled to allowance and to the remedy prescribed by the legislature through ORS 135.670: dismissal of the indictment, with possible leave to refile." *Antoine I*, 269 Or App at 78 n 7.

that his "decision to not move for pre-trial 'election' was neither for tactical or strategic reasons but based upon my belief, albeit wrong, that the state was entitled to wait until the end of their case to make their 'elections.'" Petitioner submitted the trial transcript and trial counsel's written demurrer as exhibits.

After a trial, the post-conviction court granted relief, reasoning that "[t]he findings and conclusions made by the Court of Appeals in this case compel a finding that the Petitioner is entitled to post-conviction relief." As to prejudice, the post-conviction court reasoned that, had a motion for a pretrial election been filed, the "judge would have either granted the motion and Petitioner would have been provided with proper notice or the judge would have denied the motion and the conviction would have been reversed by the Court of Appeals. In either even[t], the failure had a tendency to affect the outcome of the proceeding."

The superintendent appealed. The Court of Appeals reversed the decision of the post-conviction court, concluding that petitioner had not shown deficient performance:

> "Given the state of the law at the time of petitioner's trial, especially *Hale*, petitioner has not established that constitutionally competent counsel would have understood then that he should have made an argument insisting on a pretrial election by the state or that there was an obvious benefit to doing so under the circumstances."

*Antoine II*, 303 Or App at 499. This court allowed review.

## II.   ANALYSIS

### A.   *Standards for Deficient Performance of Counsel*

Both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution provide guarantees against inadequate or ineffective counsel in criminal proceedings. To obtain relief under either constitution, a post-conviction petitioner must show "that counsel failed to exercise reasonable professional skill and judgment, and that the petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). Under most circumstances,

the state and federal standards are "functionally equivalent." *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

We begin with the first prong of the analysis, whether petitioner has shown that counsel performed deficiently. To prove deficient performance, it is not enough to show "that another lawyer would have tried the case differently" or "that a reviewing court would disagree with that counsel's decision." *Krummacher v. Gierloff*, 290 Or 867, 881, 627 P2d 458 (1981). We have explained that "[t]he constitution gives no defendant the right to a perfect defense," *id.* at 875, and that whether deficient performance can be shown will depend on whether counsel's actions or inaction reflected an absence of "professional skill and judgment." *Id.* at 875-76; *see also State ex rel Juv. Dept. v. Geist*, 310 Or 176, 190-91, 796 P2d 1193 (1990) ("A particular tactical decision will constitute inadequate assistance of counsel only if a court affirmatively finds that *no* adequate counsel would have followed that tactic under the circumstances and, therefore, that following that tactic reflected an absence or suspension of professional skill and judgment." (Emphasis in original.)). Moreover, in evaluating whether counsel exercised reasonable professional skill and judgment, we "must make every effort to evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight." *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002); *see Strickland v. Washington*, 466 US 668, 689, 104 S Ct 2052, 80 L Ed 2d 674 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

In applying those standards, our decision in *Burdge v. Palmateer*, 338 Or 490, 112 P3d 320 (2005), is the most pertinent. In that case, the petitioner had been sentenced under ORS 137.635, a statute mandating determinate sentences when the defendant had qualifying prior convictions. *Id.* at 493-94. The petitioner had been convicted in three separate cases, which were all sentenced at the same time, and the trial court had determined that the convictions in the first case triggered determinate sentences in the second

and third cases. *Id.* at 494. Around two years later, the Court of Appeals had held, in *State v. Allison*, 143 Or App 241, 923 P2d 1224, *rev den*, 324 Or 487 (1996), that ORS 137.635 applied only where "one finding of guilt preceded the defendant's committing the crime that led to the other finding of guilt," *Burdge*, 338 Or at 495, a determination that made ORS 137.635 (1993) inapplicable to the petitioner's case. He sought post-conviction relief, claiming that counsel had performed deficiently by failing to make the argument that the Court of Appeals had later accepted in *Allison*. *Burdge*, 338 Or at 495.

        We held that counsel had not performed deficiently. We first emphasized that the petitioner's argument, which the Court of Appeals had accepted,

> "incorrectly assume[d] that, because a court eventually recognized a statute's ambiguity, any lawyer exercising reasonable professional skill and judgment would have done the same. But issues do not recognize themselves; the task of identifying and evaluating potential issues rests on the skills of the lawyer. Although that *is* a skill, the Court of Appeals' majority nevertheless failed to apply the 'reasonable professional skill and judgment' test to its exercise."

*Id.* at 497 (emphasis in original). That is, an appellate decision issued after petitioner's trial cannot, on its own, demonstrate that trial counsel failed to exercise reasonable professional judgment in failing to spot a debatable legal issue. We explained that, instead,

> "[i]n situations similar to this one, the post-conviction court may grant a petitioner relief only if it can say affirmatively that a lawyer exercising reasonable professional skill and judgment would have recognized the statutory ambiguity, would have seen an interpretation that could benefit the defendant, and would have concluded under the circumstances that the potential benefits of advancing that interpretation exceeded any risks."

*Id.* In *Burdge*, without deciding whether the Court of Appeals had correctly interpreted ORS 137.635, we concluded that the claim failed because ORS 137.635 was "not so obviously ambiguous that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it."

*Id.* at 497-98. We reached that conclusion by "look[ing] at the statute as a lawyer would have seen it at the time," noting that the trial court's construction of the statute was intuitive, and noting that "nothing makes this statute stand out as being ambiguous." *Id.* at 498. We made clear that the above analysis applies under both the state and federal constitutions. *Id.* at 500-01.

In this case, petitioner argues that trial counsel provided inadequate assistance in relation to his argument that the charging instrument provided him with insufficient notice. Petitioner does not take issue with the substance of trial counsel's arguments—petitioner argues that counsel "correctly determined that the charging method and discovery deprived petitioner of notice of the nature and cause of the accusation against him in violation of Article I, section 11, of the Oregon Constitution, the Sixth and Fourteenth Amendments to the United States Constitution, and ORS 132.550(7)." Instead, his claim is that counsel performed deficiently by raising those issues through an improper mechanism. He argues, as the Court of Appeals held in petitioner's direct appeal, that this court's decision in *Hale* made clear that the issue of pretrial notice could not be litigated through a demurrer. As petitioner frames the issue, "*Hale* foreclosed one of the two possible ways to obtain pretrial notice—a demurrer. That left a motion for a pretrial election as the only method of achieving counsel's goal and obtaining petitioner's constitutionally guaranteed notice." The thrust of petitioner's argument is that his trial counsel should have known—or at least perceived a risk—that *Hale* had held that a demurrer could not be used to raise challenges to inadequate pretrial notice, so he should have attempted to raise those challenges by moving for a pretrial election instead, or in addition.

Unlike *Burdge*, which involved a pure issue of statutory construction, this case involves both constitutional and statutory interpretation, as well as interpretation of existing case law. But *Burdge*'s analytical approach remains applicable. Here, the necessary premise of petitioner's argument is that, after *Hale*, trial counsel should have understood that a challenge to the indictment based on its failure to provide

sufficient notice could not be raised through a demurrer or, at minimum, that understood the law to be unclear on that point, such that he should have moved for a pretrial election to be on the safe side. *Burdge* makes clear that we can accept that premise only if the state of the law was "so obviously ambiguous that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it." 338 Or at 497-98.

Both parties' briefs address other important questions, including whether the indictment in this case provided petitioner with adequate pretrial notice, when an election before the close of the state's case is required, what procedural mechanism was available to petitioner to challenge the sufficiency of the pretrial notice, and whether the state's method of charging "representative" counts was permissible. But those questions are not before us in this postconviction case, and we do not express any view on them in this opinion. Instead, to address whether petitioner's trial counsel performed deficiently, we examine the state of the law at the time of petitioner's trial to evaluate whether trial counsel's decision to litigate the notice issue primarily through a demurrer was unreasonable.

B.  *Pretrial Notice Before* Hale

There are several sources of law that may entitle a defendant to pretrial notice, and petitioner's trial counsel relied on four of them in the trial court. First, ORS 132.550(7) specifies that an indictment must substantially contain "[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended[.]" Second, Article I, section 11, of the Oregon Constitution provides that a defendant has the right "to demand the nature and cause of the accusation against him, and to have a copy thereof." Third, the Sixth Amendment to the United States Constitution gives a defendant a similar right "to be informed of the nature and cause of the accusation[.]" Trial counsel also relied on the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

We have explained before, in the context of ORS 132.550(7), that

> "the objects of an indictment are (1) to inform the defendant of the nature of the crime with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the defendant to avail himself of his conviction or acquittal thereof if he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction."

*State v. Cohen*, 289 Or 525, 529, 614 P2d 1156 (1980). Petitioner does not appear to dispute that, at least prior to *Hale*, a demurrer was an appropriate mechanism to challenge an indictment on the grounds that it failed to comply with ORS 132.550(7).[2] The text of ORS 135.630(2) provides that a "defendant may demur to the accusatory instrument when it appears upon the face thereof: * * * If the accusatory instrument is an indictment, that it does not substantially conform to the requirements of ORS 132.510 to 132.560, 135.713, 135.715, 135.717 to 135.737, 135.740 and 135.743[.]" That provision at least appears to create a statutory remedy if the statutory right created by ORS 132.550(7) is not satisfied. ORS 135.630(6) also permits demurrer to an accusatory instrument on the ground "[t]hat the accusatory instrument is not definite and certain." A different provision, ORS 135.640, provides that, "[w]hen the objections mentioned in ORS 135.630 appear upon the face of the accusatory instrument, they can only be taken by demurrer," except for objections relating to the court's subject matter jurisdiction or to indictments that fail to state an offense. Taken together, those statutes are most straightforwardly read as suggesting that a challenge to an indictment based on ORS 132.550(7) not only can but *must* be raised by demurrer.

---

[2] Petitioner argues that our decisions in *State v. Keelen*, 103 Or 172, 203 P 306, *reh'g den*, 103 Or 188, 204 P 162 (1922), and *State v. Lee*, 202 Or 592, 276 P2d 946 (1954), and the decision of the Court of Appeals in *State v. Magana*, 212 Or App 553, 159 P3d 1163, *rev den*, 343 Or 363 (2007), show that a pretrial election was, even before *Antoine I*, an established remedy for inadequate pretrial notice. All of those cases discussed the timing of elections, but none of those decisions involved *pretrial* elections and none of them linked elections to any of the statutory or constitutional rights to pretrial notice that petitioner's trial counsel relied on. Moreover, even on defendant's reading, none of those cases suggest that a demurrer was an inappropriate mechanism for raising pretrial notice issues.

Putting *Hale* to one side, the appellate case law that would have been available to petitioner's trial counsel would have supported that interpretation of the statutes. This court has considered challenges to an indictment under ORS 132.550(7) or its predecessors on numerous occasions, and it appears that in virtually all of those cases the issue was raised through a demurrer. *See, e.g.*, *State v. Fair*, 326 Or 485, 953 P2d 383 (1998); *State v. Sanders*, 280 Or 685, 572 P2d 1307 (1977); *State v. Nussbaum*, 261 Or 87, 491 P2d 1013 (1971); *State v. Darlene House & James House*, 260 Or 138, 489 P2d 381 (1971); *State v. Molitor et ux*, 205 Or 698, 289 P2d 1090 (1955); *State v. Smith*, 182 Or 497, 188 P2d 998 (1948).[3] And, in *State v. Lotches*, 331 Or 455, 463, 17 P3d 1045 (2000), we had declined to consider a challenge to an indictment under ORS 132.550(7) because the "[d]efendant did not demur or otherwise object to the indictment. This court often has held that objections to the sufficiency of an indictment not timely raised are waived." *Id.* at 465.

The Court of Appeals had likewise held that "[a] demurrer to an indictment on the ground that it is not sufficiently definite or certain is properly raised under ORS 135.630(2), which, by express reference, requires that the indictment conform to ORS 132.550(7)." *State v. Morgan*, 151 Or App 750, 753 n 4, 951 P2d 187 (1997), *rev den*, 327 Or 82 (1998) (emphasis omitted). And it has considered the issue when raised through a demurrer on numerous occasions. *See, e.g.*, *State v. Wright*, 167 Or App 297, 999 P2d 1220, *opinion adh'd to as modified on recons*, 169 Or App 78, 7 P3d 738, *rev den*, 331 Or 334 (2000); *State v. Cooper*, 78 Or App 237, 715 P2d 504 (1986); *State v. Kincaid*, 78 Or App 23, 714 P2d 624 (1986); *State v. Thompson*, 40 Or App 461, 595 P2d 842 (1979).

---

[3] In *State v. Green*, 245 Or 319, 422 P2d 272 (1966), this court held that an indictment failed to comply with ORS 135.520(2) (1965), which contained the requirement now found in ORS 132.550(7). In that case, because part of the defendant's argument depended on showing that part of what the grand jury had alleged was false, this court held that the defendant's remedy was not through a demurrer but through a "motion for a directed verdict of acquittal or a motion in arrest of judgment," though the court was willing to consider the argument even though it was raised through an evidentiary objection. *Green*, 245 Or at 327. Petitioner does not rely on *Green*, and, in any event, petitioner's trial counsel *did* renew the arguments that he made in his demurrer in a motion for a judgment of acquittal.

Article I, section 11, likewise protects a defendant's right to pretrial notice. In our decisions, we have treated that constitutional provision as closely linked to the statutory provisions discussed above. We have explained, in the context of earlier but substantially identical statutory provisions, that "when an indictment complies with the foregoing provisions of our Code, the constitutional guaranty of the defendant 'to demand the nature and cause of the accusation against him' has been fully met." *State v. Nesmith*, 136 Or 593, 595, 300 P 356 (1931) (quoting Or Const, Art I, § 11). The upshot of that linkage between the constitutional right to notice and the contents of the charging instrument is that we have held that the Article I, section 11, right to notice must be raised in a demurrer:

> "Section 11 of the bill of rights (Art. I, section 11, Oregon Constitution) provides that, in all criminal prosecutions, the accused shall have the right to demand the nature and cause of the accusation against him. The opportunity which the statute gives an accused to question the sufficiency of an indictment as to definiteness and certainty, by demurrer on the ground that it does not conform to the provisions of chapter 7 of Title 26 of the Code (sections 26-701 to 26-722, inclusive, O.C.L.A.), meets the requirements of the bill of rights in this respect. If he fails to avail himself of that opportunity, he cannot complain afterwards. The failure of the indictment to set forth the particular acts constituting the offense charged is waived by not making timely objection thereto, as, for example, by failing to demur upon that ground before pleading to the merits."

*Smith*, 182 Or at 507-08 (additional internal citations omitted). As we summarized that portion of *Smith* in *State v. Reinke*, 354 Or 98, 309 P3d 1059 (2013), it held that "the procedural opportunity to demur to the indictment was sufficient to satisfy the constitutional right of an accused to demand notice of the nature and cause of the accusations against him or her." *Id.* at 114. As a result, both this court and the Court of Appeals have typically addressed challenges to indictments based on Article I, section 11, in tandem with statutory challenges to indictments, as in *Smith*; *Sanders*, 280 Or 685; *Molitor et ux*, 205 Or 698; and *Cooper*, 78 Or App 237.

As to the federal constitutional provisions relied on by petitioner, this court does not appear to have substantively addressed them. Petitioner has not pointed to any decision suggesting that either of those provisions must be raised in a different manner from challenges under ORS 132.550(7) or the notice clause of Article I, section 11.

C.   *The Effect of* Hale

Petitioner does not address the statutes and cases that would have suggested to many reasonable attorneys that the appropriate manner to raise the notice issue was through a demurrer. Instead, he relies almost entirely on this court's decision in *Hale*, which he contends "foreclosed one of the two possible ways to obtain pretrial notice—a demurrer."

But, with the above background in mind, petitioner's reading of *Hale* is at least not so obvious "that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it." *Burdge*, 338 Or at 497-98. In *Hale*, the defendant had been charged with multiple aggravated murders on several theories, including that the murder had been committed in order "to conceal the crime of third-degree sexual abuse and to conceal the identity of the perpetrator of the crime of third-degree sexual abuse." 335 Or at 617-18. The defendant had demurred to the indictment, arguing that the indictment was deficient because it failed to specify the identity of the victim or perpetrator of the underlying sexual abuse offenses or other identifying details about those offenses. *Id.* at 618. This court quoted at length the argument that the defendant had made in the trial court, the focus of which was that

> "'[t]his indictment can't go to the jury in the form it's in, suggesting that some sexual abuse in the third degree was committed somewhere at some time by some persons and allowing the jury to return a verdict of guilty to that count without agreeing among themselves what sexual abuse we're talking about[.]'"

*Hale*, 335 Or at 618. That is, the central concern identified by the defendant had been the need for the jury to concur on a single offense, not the defendant's difficulty in preparing for trial.

*Hale* began its analysis by discussing *Lotches*, which had involved an indictment with similar features, but to which the defendant had failed to demur. After summarizing *Lotches*, this court explained that,

> "[a]ccordingly, this case presents squarely the question left unanswered in *Lotches*, *viz.*, whether defendant was entitled to require the state to make the indictment more definite and certain, and, consequently, whether the trial court's failure to grant defendant's demurrer was error."

*Id.* at 620. In addressing that question, *Hale* first stated that

> "[w]e continue to agree with defendant that, in this case, where the record would support more than one incident of third-degree sexual abuse, defendant was entitled to know the state's precise theory of the case and which facts and circumstances the state was relying on to support the aggravated murder counts. However, we do not agree that requiring the trial court to sustain defendant's demurrer to the indictment is the proper (or only) vehicle for ensuring that defendant obtains the information that he seeks. Defendant had other avenues available to him for acquiring that information, such as later moving the court to require the state to elect a specific incident of third-degree sexual abuse, or requesting special jury instructions that clarify the matter."

335 Or at 620-21. The court then upheld the sufficiency of the indictment:

> "In light of the foregoing, we now confirm that, as this court so many times has held, an indictment generally is sufficient if it charges an offense in the words of the statute. *See, e.g.*, *State v. Fair*, 326 Or 485, 490, 953 P2d 383 (1998) (stating and relying on rule; indictment for racketeering sufficient although did not set out specific nexus between predicate offenses); *State v. Montez*, 309 Or 564, 596-97, 789 P2d 1352 (1990) (aggravated murder; indictment alleging aggravating factor of concealment of other crimes sufficient, although did not set out elements of such other crimes). Here, there is no question that the indictment used the words of the pertinent aggravated murder statute; in fact, it went on to allege the underlying offenses. That was sufficient. We find no error."

335 Or at 621 (footnote omitted). That is, *Hale* concluded, albeit without much explanation, that the case at hand fell in the general class of cases in which a charge in the words of the statute was sufficient.

In this case, the parties advocate for different readings of *Hale*. The superintendent, focusing on the latter paragraph of *Hale*, argues that "[t]he fact that the *Hale* court upheld the denial of the demurrer establishes that the *pretrial notice* was sufficient." (Emphasis in original.) The superintendent contends that this court never held that the notice was insufficient for pretrial purposes. The superintendent argues that, though this court held that the defendant was entitled to know "the state's precise theory of the case and which facts and circumstances the state was relying on to support the aggravated murder counts," *id.* at 621, nothing in *Hale* specified that the defendant was entitled to know the state's "precise theory" before trial. The superintendent interprets the reference to election or "requesting special jury instructions," *id.*, as referring to mechanisms for the defendant to learn the state's precise theory at the time of trial.

Petitioner, like the Court of Appeals in *Antoine I*, reads *Hale* as upholding the trial court's denial of the demurrer *despite* a lack of constitutionally adequate pretrial notice. Unlike the superintendent, he understands *Hale* to hold that a trial court must deny a demurrer even where a defendant *is* entitled to additional pretrial notice. As a result, petitioner reads *Hale*'s reference to requiring the state to make an election as specifying the "only possible" mechanism for a defendant to obtain notice before trial.

In the posture of this case, we do not need to decide which interpretation of *Hale* is correct. As in *Burdge*, we conclude only that petitioner's reading of *Hale* is not so obvious "that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it." *Burdge*, 338 Or at 497-98.

To begin with, although *Hale* held that the defendant "was entitled to know the state's precise theory of the

case," 335 Or at 621, *Hale* did not expressly state that the defendant was entitled to know the state's theory with precision *before trial*. Moreover, *Hale* specified that the defendant's "avenues" for obtaining that information included "*later* moving the court to require the state to elect a specific incident of third-degree sexual abuse, or requesting special jury instructions that clarify the matter." *Id.* at 621 (emphasis added). Both the use of the term "later," and one of the two alternative remedies that *Hale* proposed—special jury instructions—could support a conclusion that *Hale* was not referring to pretrial notice. Similarly, while the word "election" *could* be used to refer to a choice by the state about its theory in advance of trial, in Oregon practice that term more typically had been used to refer to a choice by the state between competing legal or factual theories during trial.[4] *See, e.g.*, *State v. Reyes*, 209 Or 595, 622, 308 P2d 182 (1957) (noting that an election by the state may be required when the evidence at trial shows multiple acts that could be the basis for the conviction); *State v. Ewing*, 174 Or 487, 496, 149 P2d 765 (1944) (so holding). That is, when read in context, the quoted statement from *Hale* could easily be seen as responsive to the defendant's arguments about the need for jury concurrence, rather than a holding about pretrial notice. *See State v. Pipkin*, 354 Or 513, 517, 316 P3d 255 (2013) (holding that, when the evidence supports a conviction on two or more distinct legal or factual theories, either an election or a jury concurrence instruction is required); *State v. Houston*, 147 Or App 285, 292, 935 P2d 1242 (1997) (same).

In considering whether petitioner's interpretation of *Hale* was so obvious that it would have occurred to "any lawyer exercising reasonable professional skill and judgment," *Burdge*, 338 Or at 498, we also take into account what was absent from *Hale*. *Hale* did not address (much less purport to overrule) this court's many prior decisions holding that statutory or Article I, section 11, notice issues can or even must be raised in a demurrer. *Hale* did address *Sanders*, 280 Or 685, the most recent decision of this court holding that a

---

[4] As the Court of Appeals subsequently observed, a "pretrial election" serves "a fundamentally different purpose," *State v. Payne*, 298 Or App 411, 421, 447 P3d 515 (2019), from an election in the jury concurrence context.

demurrer should have been granted because the indictment failed provide sufficient notice of the state's theory of the case, but it distinguished *Sanders* on the merits, without suggesting that *Sanders* had granted an improper form of relief. *See Hale*, 335 Or at 621 n 6. And, as the Court of Appeals noted in *Antoine I, Hale* "did not explain why, under the statutory scheme concerning demurrers, if a defendant establishes that an indictment fails to provide sufficient notice, the defendant is not entitled to allowance and to the remedy prescribed by the legislature through ORS 135.670: dismissal of the indictment, with possible leave to refile." 269 Or App at 78 n 7. In the absence of such an explanation, or any other express statement that *Hale* had eliminated a previously appropriate mechanism for challenging a lack of adequate pretrial notice, it is difficult to conclude that such a reading of *Hale* was so obvious that it would have occurred to any reasonable attorney.

Moreover, *Hale* was decided in 2003, and the proceedings in petitioner's case occurred in 2010 and 2011. By that time, the Court of Appeals had considered pretrial notice issues raised through a demurrer in at least three decisions issued *after Hale*, including *State v. Duffy*, 216 Or App 47, 171 P3d 988 (2007), which petitioner's trial counsel cited in the hearing on the demurrer. *See also State v. Molver*, 233 Or App 239, 225 P3d 136, *rev den*, 348 Or 291 (2010); *State v. Magana*, 212 Or App 553, 565, 159 P3d 1163, *rev den*, 343 Or 363 (2007). Although those cases were decided against the defendants on the merits, none of those decisions suggested that a demurrer was an improper mechanism for challenging the adequacy of pretrial notice. Trial counsel would have had little reason to expect the Court of Appeals, notwithstanding several recent decisions to the contrary, to hold that *Hale* required a different approach.

We also observe that neither the prosecutor nor the trial court read *Hale* in the manner that the Court of Appeals did in *Antoine I*. Petitioner faults counsel for raising the notice issue in a demurrer without arguing "that *Hale* was distinguishable or wrongly decided." But counsel was not confronted with an argument that he had raised

the issue in an inappropriate manner, and the trial court addressed, and rejected, his notice argument on the merits, holding that petitioner was not entitled to additional pretrial notice. *Hale* was not cited at all in the trial court.[5] Trial counsel did not fail to respond to an argument against his position and he was not alone in failing to detect an ambiguity in the law.

In short, petitioner has identified no decision available to trial counsel that clearly held that a demurrer was not an appropriate mechanism to raise a statutory or constitutional challenge to the sufficiency of pretrial notice in the charging instrument or even that would have indicated that a motion for a pretrial election was a productive alternative mechanism through which to raise the issue. Petitioner has not presented any evidence that his reading of *Hale* was widely shared or even that any other attorney had read *Hale* in that manner prior to *Antoine I*. And petitioner's theory of deficient performance fails to account for the longstanding body of authority holding that a demurrer is an appropriate way to raise a challenge under ORS 132.550(7) or the notice clause of Article I, section 11. Much as in *Burdge*, when we take into account the information available to trial counsel at the time, we cannot conclude "that any lawyer exercising reasonable professional skill and judgment necessarily would have seen," 338 Or at 497-98, the arguable ambiguity in the case law subsequently identified by the Court of Appeals in *Antoine I*. We conclude that petitioner has not shown that trial counsel failed to exercise reasonable professional judgment in raising the issue of pretrial notice primarily through a demurrer, rather than through a motion for a pretrial election. He therefore is not entitled to post-conviction relief on his claim of inadequate assistance of counsel.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[5] In the Court of Appeals, the state did cite *Hale*, but it did not argue that *Hale* made a demurrer an inappropriate mechanism to challenge an indictment for failing to provide adequate pretrial notice, and it did not argue that petitioner should have sought a pretrial election instead. *Antoine I*'s reading of *Hale* appears to have originated with the Court of Appeals, rather than with either of the parties.

**DUNCAN, J.,** concurring.

I concur in the majority's opinion. I write separately to point out how the lack of clarity in the case law has affected this post-conviction case and the underlying criminal case. As the majority recounts, in the underlying criminal case, the state charged petitioner by grand jury indictment with four counts of sodomy, four counts of first-degree sexual abuse, and one count of furnishing sexually explicit material. The indictment did not specify the incidents that the counts were based on. The counts simply used the statutory definitions of the crimes and alleged that petitioner had committed the crimes during a two-year period. As a result, the four sodomy counts were identical to each other and the four first-degree sexual abuse counts were identical to each other. The discovery that the state provided petitioner did not remedy the lack of clarity in the indictment; instead, it compounded it because it showed that the alleged victim had reported a greater number of criminal acts than charged in the indictment. Consequently, as the state acknowledged, any count in the indictment would cover multiple criminal acts in the discovery.

Because of the lack of clarity regarding the bases for the counts, petitioner's defense counsel demurred to the indictment, contending, among other things, that, even when considered in connection with the discovery, the indictment was not sufficiently definite and certain as required by ORS 132.550(7),[1] and did not provide adequate notice as required by Article I, section 11, of the Oregon Constitution[2] and the Sixth Amendment to the United States Constitution.[3] The state did not dispute that the indictment failed to provide petitioner notice of what incidents the counts were based on.

---

[1] ORS 132.550(7) provides that an indictment must contain a "statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

[2] Article I, section 11, of the Oregon Constitution provides, in relevant part, that, in all criminal prosecutions, the accused shall have the right "to demand the nature and cause of the accusation against him."

[3] The Sixth Amendment to the United States Constitution further provides that the accused shall have the right "to be informed of the nature and cause of the accusation."

Instead, the state argued that it was not required to, and did not intend to, decide what incidents to base each count on until after it presented its case. The trial court agreed with the state and overruled the demurrer.

Petitioner's defense counsel continued to raise the issue of lack of notice, and the state continued to assert that it did not have to provide notice of what each count was based on until after it presented its evidence. The state also informed the trial court that it had not asked the grand jury to base the counts on particular incidents. The state told the court, "[W]e haven't been tied to anything yet. So I don't know right now what Count 1 will relate to. I'll elect at the end of my case and the same with Counts 2 through 9." The trial court agreed with that approach. At trial, the state presented evidence of a greater number of criminal acts than alleged in the indictment and, after it presented its case, it made its election.

Petitioner was convicted of all counts. He appealed, assigning error to the trial court's overruling of his demurrer, among other rulings.

The Court of Appeals agreed with petitioner's argument "that the indictment itself did not provide him with sufficient notice, and the problem with inadequate notice, which arose before trial, was not cured during trial." *State v. Antoine*, 269 Or App 66, 76, 344 P3d 69, *rev den*, 357 Or 324 (2015). The court explained that, although an indictment is usually sufficient if it alleges a crime in the words of the statute defining the crime, that is not the case when, "for example, 'discovery would not aid the defendant because of the vast number of crimes from which the state could select in charging the defendant.'" *Id.* (quoting *State v. Cooper*, 78 Or App 237, 240, 715 P2d 504 (1986)). The court concluded:

> "[T]his case falls within the exception. This case involves multiple, separately identifiable criminal acts, but the indictment tracks the wording of the criminal statutes without differentiating separate criminal acts. From discovery, [petitioner] learned that the victim had described more criminal acts than were charged in the indictment, and the state elected the specific criminal acts that it was prosecuting only after the close of its case-in-chief.

> *As a result, the state's charging method effectively allowed the state to adduce evidence of multiple criminal acts in each count of the indictment, without [petitioner] knowing which of the acts would be specified and argued to the jury for convictions. Such a charging process failed to provide [petitioner] with proper notice of the charges before trial."*

*Id*. at 76-77 (emphasis added). The court further explained that such a lack of notice is prejudicial because "the state's method of charging, combined with a late election, allows the state to present evidence of a defendant's multiple bad acts and then to select, mid-trial, which of those will be considered as a charge for the jury to decide." *Id*. at 77-78. "That approach," the court continued, "undermines efforts by Oregon courts to prevent 'other acts' evidence from being introduced in contravention of the principle in OEC 404(3) that such evidence 'is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.'" *Id*. at 78.

Nevertheless, relying on this court's decision in *State v. Hale*, 335 Or 612, 621, 75 P3d 448 (2003), *cert den*, 541 US 942, 124 S Ct 1667, 158 L Ed 2d 366 (2004), the Court of Appeals affirmed the trial court's overruling of the demurrer. *Antoine*, 269 Or App at 78-79. In *Hale*, the defendant demurred to an indictment on the ground that it was not sufficiently definite and certain. This court agreed that the indictment did not provide the defendant notice of the incident on which an allegation was based, but this court held that the trial court was not required to grant the defendant's demurrer because the defendant "had other avenues available to him for acquiring" the particularized information he sought, "such as later moving the court to require the state to elect a specific incident *** or requesting special jury instructions that clarify the matter." *Hale*, 335 Or at 621. Applying *Hale*, the Court of Appeals concluded that, although petitioner's defense counsel had demurred to the indictment and the indictment had not provided adequate notice, the trial court had not erred in overruling the demurrer insofar as it was based on lack of notice because "[petitioner] had another avenue to obtain adequate notice of the charges against him." *Antoine*, 269 Or App at 79. Specifically, "as in *Hale*, [petitioner] could have moved to

discover the state's election of the specific criminal acts that the state would prosecute at trial, in time for [petitioner] to tailor his defense to those specific incidents." *Id*.[4]

Not surprisingly, petitioner subsequently initiated this post-conviction relief case, alleging that his defense counsel had provided inadequate representation because he had failed to move for a pretrial election. The post-conviction court agreed and granted petitioner relief.

But the superintendent appealed, the Court of Appeals reversed, and this court now affirms that reversal. We do so based on our conclusion that petitioner failed to prove that his defense counsel should have moved for a pretrial election. In support of that conclusion, we explain that statutes relating to pretrial notice suggest "that a challenge to an indictment based on ORS 132.550(7) not only can but *must* be raised by demurrer." 368 Or at 772. And, we further explain that, "[p]utting *Hale* to one side, the appellate case law that would have been available to petitioner's trial counsel would have supported that interpretation of the statutes." *Id*. at 773 (gathering cases from this court and the Court of Appeals). Similarly, we explain that the appellate case law available to petitioner's trial counsel established that "the Article I, section 11, right to notice must be raised in a demurrer." *Id*. at 774.

Thus, what has happened in the underlying criminal case and this post-conviction case is this: the state

_____

[4] The Court of Appeals noted that, although *Hale* suggested that the defendant in that case could have obtained the notice he sought by requesting special jury instructions, such an action would be too late to provide the notice that petitioner needed in his criminal case. In *Hale*, it appears that the defendant sought notice of the basis of an allegation in order to ensure that jurors concurred on that basis. *Hale*, 335 Or at 618; *Antoine*, 368 Or at 775. But, in his criminal case, petitioner sought the notice in order to prepare and present his defense. As the Court of Appeals explained in the appeal in that case, allowing the state to identify the basis of an allegation at the jury instruction stage does not provide a defendant with sufficient notice to prepare and present his defense:

   "We note that the court's suggestion in *Hale* of 'later' actions could imply that a defendant can take action at trial, but elucidation of the state's precise theory at trial does not cure the problem of a lack of pre-trial notice, given that such notice is essential to pre-trial investigation, trial preparation, and litigation of evidentiary issues. Thus, we do not view *Hale* as impeding a defendant from filing a motion for the state's election early in the case."

*Antoine*, 269 Or App at 79 n 8 (internal citation omitted).

prosecuted petitioner based on an indictment that did not provide notice of what incidents the counts were based on; petitioner's defense counsel demurred to the indictment, but the state argued against the demurrer and the trial court overruled it; the Court of Appeals recognized the merits of petitioner's claim that he had been denied adequate notice, but held that the trial court did not err in overruling defense counsel's demurrer because defense counsel could have moved for a pretrial election; and now we hold that defense counsel would not necessarily have known to move for a pretrial election because statutes and case law indicate that claims like the one he was making should be made through a demurrer—which, of course, is one of the several ways in which defense counsel made the claim.[5]

This case illustrates the unfortunate lack of clarity in the law regarding what procedural mechanisms a criminal defendant can utilize to obtain adequate notice of the charges against him. As a result of that lack of clarity, petitioner was tried without such notice and has been unable to obtain relief either through his direct appeal or his post-conviction claim.

It bears emphasizing that, although it is unclear what steps a criminal defendant should take when the state fails to provide notice of the charges against him sufficient to enable him to prepare and present his defense, it is clear that a defendant has a right to such notice. That right should have been apparent from the statutory and constitutional provisions that petitioner's defense counsel invoked in the underlying criminal case, but to the extent that it was not, the Court of Appeals set it out expressly in its decision in that case when it concluded that the state had failed to provide petitioner with adequate notice. *Antoine*, 269 Or App at 76. Thus, it is now clear that, under Oregon law, a defendant has a right to notice of the charges against him sufficient

---

[5] As the majority recounts, petitioner's defense counsel took several steps to remedy the lack of clarity in the indictment. In addition to filing the demurrer, defense counsel also filed motions seeking access to the grand jury notes on two separate occasions and, at trial, filed a motion for a judgment of acquittal on all counts and objected to the language in the jury instructions that related to the state's election. 368 Or at 763-65. The state opposed those motions, and the trial court denied them.

to prepare and present his defense and, in cases like this, that right includes the right to pretrial notice of the incidents on which charges are based. As the Court of Appeals observed, such notice is "essential to pre-trial investigation, trial preparation, and litigation of evidentiary issues." *Id*. at 79 n 8. Consequently, in future cases, there should be no question that a defendant has a right to such notice, that the state must not violate that right, and that a trial court must enforce it.

When an indictment, read in the context of information provided in discovery, fails to provide notice sufficient for defense counsel to prepare and present his defense, defense counsel should take steps to obtain that notice, as petitioner's defense counsel did in the underlying criminal case. Although case law is unclear regarding what specific steps defense counsel should take, the appellate decisions in the underlying criminal case and this post-conviction case suggest that those steps should include demurring to the indictment and, as a backup, moving for a pretrial election.

But in the end, the title of defense counsel's filing or motion should not be dispositive when defense counsel alerts the trial court that the state has failed to provide sufficient notice for him to prepare and present a defense. When defense counsel does that, the trial court must compel the state to provide that notice.