724 January 28, 2026 No. 49

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

RICARDO SERRANO,
*Petitioner-Appellant,*

*v.*

Corey FHUERE,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
15CV20746; A180927

Gregory L. Baxter, Senior Judge.

Argued and submitted on April 29, 2025.

Daniel J. Casey argued the cause and filed the briefs for appellant.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Ryan Kahn, Assistant Attorney General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Kamins, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Petitioner appeals a judgment denying post-conviction relief. After a jury trial, petitioner was convicted of three counts of aggravated murder and sentenced to death on each count (although the Governor later commuted those sentences to life imprisonment without the possibility of parole). Once the judgment of conviction was final, petitioner sought post-conviction relief. The post-conviction court denied relief, and petitioner appeals. He raises 10 assignments of error relating to both the guilt and penalty phases of trial. The superintendent maintains that the court did not err in denying relief. As explained below, we affirm.[1]

The evidence presented during the guilt phase of petitioner's trial is summarized in *State v. Serrano*, 355 Or 172, 174-77, 324 P3d 1274 (2014), *cert den*, 576 US 1037 (2015). In short, petitioner learned that his wife was romantically involved with her coworker, Nguyen. One night, while Nguyen was at work, petitioner entered Nguyen's home and killed Nguyen's partner and her two sons. At trial, petitioner disputed that he was the one who committed the murders, but the state offered physical evidence linking him to the scene. In general terms, the state's witnesses testified that a shoe-print found at the scene matched the unique markings on the sole of one of petitioner's shoes, that the bullet casings were fired from a gun later recovered from petitioner's brother's house, that Nguyen's laptop was found hidden in petitioner's garage, and that petitioner's cellphone connected to towers in the vicinity of Nguyen's house on the night of the murders. Also of relevance on appeal, police found a TriMet ticket in petitioner's vehicle that had Nguyen's license plate number written on it. The jury found petitioner guilty as charged.

In the penalty phase, the state presented evidence that petitioner had assaulted, threatened, and raped his wife; had threatened a stranger with a gun; had told his friend that he killed someone in Mexico; and had subjected two sisters, MA and MZ, to nonconsensual sexual contact.

---

[1] We address each of petitioner's assignments of error individually, but we do not necessarily address every single argument within those assignments of error in writing. We focus on petitioner's main arguments. However, we have considered all arguments, and we reject without discussion those not expressly discussed herein.

Petitioner's penalty-phase strategy was to argue that the jury should sentence him to life in prison without the possibility of parole (instead of death) because he did not pose a risk of future violence while in an institutional setting. To that end, petitioner presented evidence that he behaved well while in pretrial custody and expert testimony to show that he posed a very low likelihood of violence in the prison system. Meanwhile, the state pursued the death penalty, arguing that petitioner was dangerous and would continue to be dangerous even in prison.

We turn to petitioner's assignments of error, which relate to both the guilt phase and the penalty phase.[2] "We review the post-conviction court's judgment for legal error, accepting as true the court's supported factual findings." *Tiner v. Premo*, 284 Or App 59, 70, 391 P3d 816, *rev den*, 361 Or 886 (2017) (internal quotation marks omitted). If the court did not make explicit findings of fact, we will presume the facts were decided in a manner consistent with its ultimate conclusion. *Id.*

*First Assignment of Error.* Petitioner argues that the post-conviction court erred in denying a claim in which he alleged that the state violated its disclosure obligations under *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), when it failed to disclose that MA had an out-of-state felony conviction for fraud. At the time of trial, the prosecution lacked actual knowledge of that conviction, but it was documented in the Law Enforcement Data Systems (LEDS). The post-conviction court denied the claim because (1) the prosecution was not in actual or constructive possession of that information, and (2) it was not "material" information.

The prosecution must disclose to the defense favorable and material evidence, including information not known to the prosecutor but known to the others acting on the state's behalf in the case. *Kyles v. Whitley*, 514 US 419, 437, 115 S Ct 1555, 131 L Ed 2d 490 (1995); *Brady*, 373 US at

---

[2] In the end, the Governor's commutation resulted in petitioner receiving the very sentences for which he advocated in the penalty phase of trial. Petitioner asserts that the commutation should have no effect on our analysis of prejudice and materiality in the penalty phase, and the superintendent is silent on that issue. We assume for purposes of this appeal that the commutation is irrelevant.

87. Evidence is "material" if, among other things, "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 US 667, 682, 105 S Ct 3375, 87 L Ed 2d 481 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

Assuming without deciding that the post-conviction court erred in concluding that the contents of LEDS was not in the constructive possession of the prosecution, it did not err in concluding that petitioner failed to establish that the out-of-state conviction was material. MA testified in the guilt phase that petitioner had asked her to write Nguyen's license plate number down on a TriMet ticket and that after the murders she saw petitioner with a laptop that he was concerned about being traced. During the penalty phase, she testified that petitioner subjected her to sexual contact without her consent. Petitioner argues that those aspects of MA's testimony were "crucial" to the prosecution's case. However, her guilt phase testimony was strongly corroborated by other physical evidence: Nguyen's license plate number was found written on TriMet ticket in petitioner's vehicle, and Nguyen's laptop was found hidden in petitioner's garage. Given that corroboration, the post-conviction court did not err in concluding that the impeachment value of the out-of-state conviction was insufficient to create a reasonable probability of a different outcome at the guilt phase. The same is true regarding the penalty-phase accusation of sexual assault. In the context of the entire penalty phase— including that petitioner's argument focused on keeping petitioner in prison for life and that there were other accusations of sexual assault by MZ and petitioner's wife—the post-conviction court properly concluded that the lack of the impeachment evidence did not create a reasonable probability that the result of the penalty phase would have been different.

*Second Assignment of Error.* Petitioner's next assignment of error is closely related to the first. He argues that the post-conviction court erred in denying his inadequate-and-ineffective-assistance-of-counsel (IAC) claim

based on his trial counsel's failure to discover MA's out-of-state conviction. The post-conviction court rejected the claim on both performance and prejudice grounds.

A criminal defendant has the right to adequate and effective assistance of counsel under Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. *Antoine v. Taylor*, 368 Or 760, 767, 499 P3d 48 (2021). A violation of those rights entitles a petitioner to post-conviction relief. ORS 138.530(1)(a). Under the Oregon Constitution, to succeed on a claim of inadequate assistance, a petitioner must establish by a preponderance of the evidence that "counsel failed to exercise reasonable professional skill and judgment, and that the petitioner suffered prejudice as a result." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). "In assessing the prejudice prong, a court must determine whether there was more than a mere possibility that the outcome of the criminal trial could have been different if counsel's performance was not deficient." *Zyst v. Kelly*, 338 Or App 597, 610, 566 P3d 1121, *rev den*, 374 Or 188 (2025). "A functionally equivalent two-element standard governs petitioner's claim of ineffective assistance of counsel under the Sixth Amendment." *Smith v. Kelly*, 318 Or App 567, 568-69, 508 P3d 77 (2022), *rev den*, 370 Or 822 (2023).

Here, we affirm the post-conviction court's ruling on the prejudice prong and therefore need not reach the performance prong. For the very same reasons described above, the post-conviction court properly concluded that the failure to find the out-of-state conviction was not sufficient to satisfy the prejudice standard.

*Third Assignment of Error.* Petitioner argues that the post-conviction court erred in denying his claim alleging that the state knowingly introduced or failed to correct false evidence. *See Napue v. Illinois*, 360 US 264, 269, 79 S Ct 1173, 3 L Ed 2d 1217 (1959) (holding that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment," as must a conviction where the state, "although not soliciting false evidence, allows it to go uncorrected when it appears"). To prove a *Napue* claim, a petitioner must establish that "(1) the testimony (or evidence) was actually

false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *Tiner*, 284 Or App at 71 (internal quotation marks omitted). In this case, petitioner points to testimony by sisters MA and MZ in which they described petitioner as a "friend." He argues that the state was aware at the time of that testimony that both sisters had accused petitioner of sexually assaulting them. The post-conviction court denied the claim because it found that "the prosecution did not intentionally permit testimony they knew to be false into petitioner's trial."

The post-conviction court did not err. Critically, petitioner produced no direct evidence from MA or MZ to establish that they lied in characterizing petitioner as a "friend" to the jury. Instead, petitioner relied on the assumption that a person cannot consider another person as a "friend" if that person has previously sexually assaulted them. But given the complex nature of human relationships and emotions, we agree with the post-conviction court that that assumption is insufficient on its own to establish that the testimony given was actually false or that the prosecution knew or should have known it was false.

*Fourth Assignment of Error.* Petitioner argues that the post-conviction court erred in denying his IAC claim for failure to investigate and challenge MA's and MZ's allegations of nonconsensual sexual contact during the penalty phase. The post-conviction court denied the claim on both the performance and prejudice prongs. We need not resolve the performance issue, because we affirm based on prejudice.

Petitioner argues that his trial counsel was blindsided by MZ's allegations during the guilt phase. But after learning of that allegation and a similar allegation made by her sister, MA, in the days before the penalty phase began, petitioner argues trial counsel should have done more to investigate and challenge the accusations, including (1) interviewing Marcelino Soberanis, who had knowledge that petitioner was "dating" MZ (contrary to her denial of such a relationship), and (2) retaining a neuropharmacologist to evaluate the sisters' insinuation that they had been

drugged and their claim that they were too intoxicated to consent.

First, with regard to Soberanis, he explained during a deposition that he was aware that petitioner and MZ were "dating" at some point. However, Soberanis gave no other description of what he meant by "dating" and had no direct knowledge of the alleged sexual assault of either sister. Although evidence that petitioner and MZ had ever "dated" may have contradicted MZ's disclaimer of a romantic relationship, it would have done little to undercut her claim of nonconsensual sexual contact. And his testimony would have left untouched the similar allegation made by MA and the evidence that petitioner subjected his wife to nonconsensual sexual contact. In that context, the probative value of Soberanis's limited testimony would have been minimal.

Second, petitioner offered evidence that a neuropharmacologist was available to consult with the defense at the time of trial and could have testified (1) that the sisters' accounts were inconsistent with being drugged, and (2) that a lack of memory does not necessarily mean a lack of ability to consent. Although that evidence might have had some beneficial value, it would not have directly contradicted the sisters' assertions of nonconsent, nor changed the fact that they were at least extremely intoxicated at the time, if not drugged. On this record, we cannot say that the post-conviction court erred in concluding that petitioner failed to establish prejudice.

*Fifth Assignment of Error.* Petitioner assigns error to the denial of a second *Brady* claim, relating to the state's failure to disclose the involvement of a state's witness, Preciado, in a fraud investigation of her ex-boyfriend. Preciado testified in the penalty phase that petitioner once told her that he had murdered someone in Mexico and that he had once asked her about arranging a drug buy. The prosecution did not disclose before her testimony that, on the morning of her testimony (before she testified), an officer told Preciado that he wanted to speak with her regarding an ongoing criminal investigation of her ex-boyfriend, and she agreed to speak

with him the next day.[3] Petitioner claims that that information was favorable and material for impeaching Preciado's credibility by showing a possible motive to curry favor with the state. The post-conviction court denied the claim for lack of materiality.

The court did not err. Had petitioner had the information at issue and tried to impeach Preciado with it, the prosecution could have easily rehabilitated her by showing that Preciado told the police two years earlier, long before she learned of the investigation of her ex-boyfriend, that petitioner admitted to killing someone in Mexico, which was the key point. Petitioner argues that, if that happened, he could have come back with evidence that Preciado maintained a positive relationship with him even after his arrest for murder and told defense investigators that he did not seem capable of killing anyone. But petitioner could have put on that evidence in any event, if he felt that it undermined Preciado's testimony—it is unrelated to the bias theory and would not meaningfully undermine the rehabilitative effect of the prior consistent statements. The post-conviction court did not err in denying the claim on materiality grounds.

*Sixth Assignment of Error.* Petitioner assigns error to the denial of his IAC claim for trial counsel's failure to adequately address petitioner's future likelihood of violence in the penalty phase. Petitioner points to two specific shortcomings: (1) the failure to present available evidence on petitioner's low probability for future violence in a prison setting and (2) the failure to object to race-based gang testimony. The post-conviction court denied the claim on both performance and prejudice grounds. We affirm on the performance prong and, with regard to the second issue, alternatively on the prejudice prong.

First, petitioner argues that his trial counsel should have called an expert who could have more effectively established that petitioner presented a low likelihood of future violence in prison. However, petitioner *did* offer

---

[3] When Preciado spoke to the officer the next day, she ended up confessing to having committed an act of forgery on her ex-boyfriend's behalf. Because that event happened after Preciado testified, the state necessarily could not have disclosed it.

the testimony of two experts on that subject, including one who covered the same general topics as Dr. Cunningham, the expert whom petitioner consulted in post-conviction. We agree with the post-conviction court that petitioner failed to establish that it was constitutionally deficient performance for counsel to retain those two experts instead of Cunningham. *See McDonnell v. Premo*, 309 Or App 173, 195, 483 P3d 640 (2021), *rev den*, 369 Or 507 (2022) ("The fact that petitioner would, in retrospect, have presented evidence of a future risk of violence in prison in a different way than trial counsel is not a ground for post-conviction relief if counsel acted reasonably in presenting the defense that they did.").

Second, petitioner argues that his trial counsel rendered constitutionally deficient performance by failing to object to evidence about "Hispanic" prison gangs during the penalty phase. Wagner, a state's witness, stated during his testimony that gangs in prison are typically divided by race, and he testified about the operation, recruitment practices, and hierarchy of Hispanic gangs. Petitioner argues that his trial counsel should have objected to the injection of race into the penalty phase because it impermissibly implied that petitioner was more likely to be violent in prison due to his race. The post-conviction court disagreed, explaining that the state never suggested that petitioner's race had anything to do with his likelihood to act violently.

Although we share petitioner's core concern—that is, the risk that a jury might impermissibly rely on overt or implicit racial bias in rendering its decision—we see no error in the post-conviction court's ruling. As the Supreme Court summarized in its opinion in petitioner's direct criminal appeal:

> "Wagner was asked how, generally speaking, gangs within DOC institutions are organized. He answered that they were organized by race, including 'white[,] Hispanic and black' gangs. Nothing in that answer supported an inference that Hispanic gangs were more dangerous than other racially organized gangs."

*Serrano*, 355 Or at 200-01 (footnote omitted; brackets in original). In other words, Wagner's testimony described

the manner in which a particular prison gang may have approached petitioner for recruitment and where he might rank in the hierarchy of that gang due to his crimes, but he did not insinuate that petitioner posed a greater risk of violence because of his race. *See State v. Sparks*, 336 Or 298, 324, 83 P3d 304, *cert den*, 543 US 893 (2004) (because a penalty phase jury must consider "whether defendant would be dangerous in prison society, the jury necessarily needed to understand the nature of that society"). For those reasons, we cannot say that it was constitutionally deficient not to object to that testimony.

Alternatively, petitioner has failed to establish prejudice because he failed to establish that an objection to that testimony would have been properly sustained and failed to establish that eliminating the race-based description of prison gang operation would have had a tendency to affect the verdict.

*Seventh Assignment of Error.* In a closely related argument, petitioner challenges the denial of his IAC claim for failure to object to the introduction of a hat pin that was found in petitioner's vehicle. That pin had the words "El Cartel" and an AK-47 rifle on it and was attached to a cowboy hat. Petitioner argues that, especially when considered with the prison-gang evidence discussed above, the hat pin exacerbated the risk of racial bias in the jury's deliberation. The post-conviction court rejected the claim on the performance and prejudice prongs, concluding that the pin was admissible evidence that petitioner "embraced images of violent organizations."

Petitioner's argument on appeal is limited to distinguishing the case law applied by the lower court, and he fails to develop any affirmative argument that the hat pin was inadmissible in the penalty phase. Instead, he simply argues that it exacerbated the risk of Wagner's prison-gang testimony. Given our conclusion regarding Wagner's testimony, the potential exacerbation of a potential inference from that testimony was not a legally sufficient basis to object to or exclude evidence. We reject petitioner's underdeveloped argument, and we affirm on both performance and prejudice grounds.

*Eighth Assignment of Error.* Petitioner challenges the denial of his IAC claim alleging that trial counsel was deficient for failing to investigate and present penalty-phase mitigation evidence of petitioner's behavior during pretrial incarceration. The post-conviction court found that trial counsel had presented such evidence in the penalty phase and thus ruled that petitioner failed to prove deficient performance.

Petitioner's argument centers on trial counsel failing to interview and present as witnesses people who personally interacted with petitioner in jail. Instead, counsel relied on the testimony of the jail's program manager, who presented evidence that petitioner had obtained his GED, engaged in numerous programs, and received scores from program instructors indicating that his effort and performance ranged from "adequate" to "exceptional," and that he had received only three minor disciplinary infractions. Petitioner points out that, on cross-examination, the program manager's testimony was undercut by her lack of personal knowledge—she could not verify the accuracy of the records or personally speak to petitioner's behavior. Petitioner argues that testify from witnesses with personal knowledge of his behavior in pretrial custody would have been much more compelling than the secondhand report of the program manager, and three such witnesses were available to testify.

We conclude that the post-conviction court did not err in holding that petitioner failed to prove deficient performance.[4] It is true that, at trial, the state questioned the program manager's lack of personal knowledge and questioned whether petitioner's jail records may have included redundancies or otherwise gave an inflated view of his participation in programing. But there was no dispute that petitioner had transitioned successfully into the jail environment and that he had received adequate to exceptional performance

_____

[4] The post-conviction court also ruled that petitioner failed to establish prejudice because it was the superintendent, not petitioner, who offered into evidence the depositions of the three witnesses with firsthand knowledge of petitioner's behavior in jail. The superintendent concedes that that reasoning was erroneous, and we agree. However, as described in the text, we affirm based on the performance issue.

ratings by jail staff and volunteers. Given that trial counsel presented evidence that was reasonably calculated to establish petitioner's successful adaptation to institutional life, we agree that the failure to investigate and present further evidence to prove that same point did not constitute deficient performance.

*Ninth Assignment of Error.* Petitioner argues that the post-conviction court erred in rejecting his cumulative-error claim based on petitioner's failure to properly plead it. The superintendent concedes "that the theory of cumulative error did not need to be separately pleaded." Nonetheless, even assuming the post-conviction court erred in that regard, any error was harmless.

With regard to petitioner's *Napue* and *Brady* claims, we analyze the effects of those claims collectively to determine whether a petitioner was denied due process of law. *Tiner*, 284 Or App at 71 ("Although the standards for determining materiality under *Brady* and *Napue* are different, we analyze those claims collectively to determine whether petitioner was denied due process of law."). As discussed above, petitioner failed to establish the admission of a false statement as necessary to establish a *Napue* claim, and we conclude that, even when considered collectively, petitioner's *Brady* claims fall short of the materiality standard.

With regard to his IAC claims, petitioner acknowledges that Oregon courts have yet to recognize a cumulative-error theory and that we routinely reject such arguments on that basis. *See, e.g.*, *Zyst*, 338 Or App at 600; *Vega-Arrieta v. Blewett*, 331 Or App 416, 428, 545 P3d 746, *rev den*, 372 Or 763 (2024); *Manning v. Kelly*, 325 Or App 31, 36, 528 P3d 311 (2023) ("Oregon courts have yet to recognize such a theory and we accordingly reject that assignment."). Nevertheless, petitioner argues that those cases are plainly wrong and should be overruled. "[T]he party urging us to abandon precedent must affirmatively persuade us *** that a decision is plainly wrong." *Thorson v. Bend Memorial Clinic*, 291 Or App 33, 38, 419 P3d 756, *rev den*, 363 Or 481 (2018). Because petitioner has failed to do so, we reject the argument. Furthermore, even if we were to consider the prejudice identified in petitioner's IAC claims

collectively, we would conclude that he did not establish sufficient prejudice.

 *Tenth Assignment of Error.* Petitioner contends that the post-conviction court erred in granting summary judgment to the superintendent on three claims based on *Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994), and *North v. Cupp*, 254 Or 451, 461 P2d 271 (1969), *cert den*, 397 US 1054 (1970), because those cases are wrong and should be overruled. Because they are Oregon Supreme Court cases, petitioner acknowledges that we lack the authority to overrule them, and he makes the argument only to preserve it for further review and for federal exhaustion purposes.

 Accordingly, we affirm the post-conviction judgment.

 Affirmed.